OPINION OF THE COURT
Michael D. Stallman, J.
In this wrongful payment action, defendant bank seeks summary judgment based on the depositor’s agreement. The following question is presented: Does a drawee bank’s negligent payment of a check over an obviously missing drawer’s signature relieve a drawer depositor of its duty to promptly *290 notify the bank and commence suit during the periods provided by the account agreement?
FACTS
Plaintiff Parent Teacher Association (PTA) sues defendant Manufacturers Hanover Trust company (MHT) for breach of contract and negligence in wrongfully honoring six checks aggregating $8,090, drawn on, and paid out from, plaintiff’s account. PTA claims that all drawers’ signatures were forged, and that three checks bore only 1 of the 2 required drawer signatures. Defendant MHT moves for summary judgment contending that plaintiff’s claim is barred by noncompliance with a condition precedent and a period of limitation in the depositor’s agreement.
During 1983 and 1984, PTA maintained a checking account with MHT. Prior to opening its account, PTA executed and filed with MHT a signature card containing a "Depositor’s Contract” and "Certificate to Resolutions and Security Agreement Governing Bank Account for Unincorporated Associations.” The documents, read as a whole, constitute the parties’ agreement. Both documents required that all of plaintiff’s checks bear the signatures of two PTA officers — Gloria Cox-field, president, and Carol Messina, treasurer. The depositor’s contract contained PTA’s agreement to be bound by the monthly statement of account. All account statements and correspondence were to be mailed to Carol Messina at her home. It is not disputed that their execution clearly manifested the parties’ knowledge of, and intent to be bound by, their terms.
On December 23, 1983 and January 25, 1984, MHT mailed regular monthly statements to Carol Messina. Each of these statements contained forged checks that MHT had paid during the preceding month. Each such statement contained the following warning: "Please examine statement of account and vouchers at once * * * The bank disclaims responsibility for any error in, or improper charge to, the account as rendered unless informed in writing of it within fourteen days of the delivery, mailing or availability of any statement and can-celled vouchers.”[1]
*291 It is not disputed that the two statements were promptly delivered to the Messina home.[2] However, PTA alleges that Carol Messina did not see such statements until January 27, 1984, because her husband, Lee Messina, had intercepted them to conceal his forgery.[3] Four of the checks were payable to "C.L. Electric Service” and the other two were payable to Lee Messina himself.
It was not until February 3, 1984 that Carol Messina orally informed PTA’s executive board of the forgery. Although a PTA representative orally informed MHT of the forgeries and missing signatures that same day, no one gave written notice to MHT until February 10, 1984. It is not clear when Carol Messina first learned that the checks were missing, although she claims that her husband admitted having forged the checks and intercepted the bank statements in a conversation with her on January 27, 1984. This action was not commenced until March 26, 1985.[4]
THE LAW
Before enactment of the Uniform Commercial Code and its predecessor statutes, common law governed the relationship between a bank and its depositors. A depositor was under a duty to exercise reasonable care to examine returned checks and verify statements in order to detect forgeries. (Frank v Chemical Natl. Bank, 84 NY 209; see, Leather Mfrs’. Bank v Morgan, 117 US 96; Critten v Chemical Natl. Bank, 171 NY 219; Morgan v United States Mtge. & Trust Co., 208 NY 218.) If the depositor neglected his duty and failed to notify the bank of forgeries within a reasonable time, any loss that *292 ensued as a result of such negligence was borne by the depositor, provided that the bank was free from contributory negligence. (Screenland Mag. v National City Bank, 181 Misc 454; Thomson v New York Trust Co., 266 App Div 384; Gutfreund v East Riv. Natl. Bank, 251 NY 58.)
The depositor’s common-law duty has been codified by the Uniform Commercial Code as follows: "[A] customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature * * * and must notify the bank promptly after discovery thereof.” (UCC 4-406 [1].)
In accord with its broad purpose of facilitating commercial relationships and curtailing litigation, the code has modified the common-law rule in a number of ways. First, the code adopted bright line distinctions which minimize the need for testimonial proof and exhaustive fact finding. Where a customer has not fulfilled his duty to the bank, the customer can be precluded, under certain circumstances, from asserting an unauthorized signature or alteration provided that the bank used ordinary care (UCC 4-406 [2], [3]). Moreover, a customer who fails to report an unauthorized signature or alteration within one year is statutorily precluded from asserting such claim notwithstanding the bank’s negligence. (UCC 4-406 [4].)
These provisions are not exclusive. Given the code’s effort to harmonize the law with its view of commercial reality, and in accord with traditional common-law notions of freedom of contract, the code permits parties to a contract of deposit to agree between themselves as to their duties, and the legal consequences to flow from breach, provided that the agreement does not disclaim the bank’s responsibility for its own lack of good faith or failure to exercise ordinary care. (UCC 4-103 [1]; 1-102 [3].) Thus, the contract of deposit may include conditions precedent or the equivalent of a shortened Statute of Limitations (see, New York Credit Men’s Adj. Bur. v Manufacturers Hanover Trust Co., 41 AD2d 912) as long as they are not unconscionable or manifestly unreasonable, or the product of overreaching. (See, UCC 4-103, Comment.)
Hornbook concepts of agency law require that, as between a bank and its depositor, the knowledge and actions of the depositor’s employee or agent be imputed to the depositor. (See, White and Summers, Uniform Commercial Code, at 630 [2d ed]; 5A NY Jur, Banks and Trust Companies, §§ 311-314, 434-439 [rev ed].) A depositor has been held to possess the *293 knowledge of a dishonest employee entrusted with the responsibility of reconciling bank statements since the depositor’s own examination could have revealed the irregularity. (Critten v Chemical Natl. Bank, 171 NY, at 234, supra; Thomson v New York Trust Co., 266 App Div, at 397, supra; Potts & Co. v Lafayette Natl. Bank, 269 NY 181.) This rationale is tautological and merely restates the obvious.
Rather, respondeat superior must be applied to the instant situation for two reasons: First, an incorporeal entity— whether a corporation or an unincorporated association such as plaintiff — can only act through an agent or employee. Second, only the depositor can take appropriate measures to assure that the persons it chooses to transact its business are honest and reliable. This rule may work a hardship on an innocent principal, particularly on an unincorporated association such as plaintiff, whose other members may ultimately bear the loss. Yet, it is the least unfair, and the only practicable means, of allocating responsibility for a situation unfortunately all too common. Nothing in law or logic justifies exempting a bank depositor from this basic principle of agency law. Moreover, the rule encourages depositors to be vigilant to the conduct of their agents and discourages collusion which could easily defraud the bank. Thus, a faithless or unreliable agent’s actions may explain, but cannot excuse, a principal depositor from his duty to examine statements and promptly inform the bank of irregularities.
THE AGREEMENT
The certificate to resolution provides the following condition precedent to suit in paragraph 8: "Unless this association shall notify the Trust Company in writing within 14 calendar days of the delivery or mailing of any statement of account and cancelled vouchers, of any claimed errors in such statement, or that this association’s signature upon any such returned voucher was forged, or that any such voucher was made or drawn without authority of this association or not in accordance with the signature arrangement * * * said Trust Company shall not be liable for any payments made and charged to the account of this association or for any other error in the statement of account as rendered to it.”
Paragraph 8 also sets forth the following contractual period of limitation: "No legal proceeding or action shall be brought by this association against the Trust Company to recover any *294 payment of any instrument upon which any signature * * * has been forged or was improper, or which was drawn, made, accepted * * * without the authority of this association * * * or not in accordance with the signature arrangements * * * unless (a) the association shall have given the written notice as provided herein above, and (b) such legal proceeding or action shall be commenced within one year after the date when such statement and cancelled vouchers were delivered or mailed to this association in the case of any unauthorized signature or any alteration on the face or back of the item”.
Subparagraph (b) is narrower in scope than (a). While requiring that suit be commenced within one year, it is specifically limited only to unauthorized signatures or alterations. While the code includes forgery in the definition of "unauthorized signature” (UCC 1-201 [43]) the contractual language implicitly excludes missing signatures. The term of art "unauthorized signature” refers to an existing signature made without "actual, implied or apparent authority”, not to the absence of such a signature.
To the extent that all the subject checks were apparently drawn by at least one authorized signatory, both subparagraphs would be applicable to the forgeries alleged here. However, the contractual period of limitation of subparagraph (b) is not applicable to the missing signatures on three of the subject checks. Accordingly, PTA’s failure to sue within one year would not bar that part of the action. Subparagraph (a), however, sets forth a condition precedent in broad terms which encompasses all of the irregularities at issue.
Neither provision constitutes an unlawful disclaimer of the bank’s liability. The subparagraphs do not absolve the bank of its duty to use good faith and ordinary care. Moreover, unlike a classic covenant not to sue, the deposit agreement does not absolutely bar the depositor from suit and does not excuse liability in futuro. (See generally, Colton v New York Hosp., 98 Misc 2d 957.) A condition precedent does limit an aggrieved party’s claim because it requires that party to first perform a specified act prior to commencing an action. Long known to the common law, conditions precedent are consistent with the goals of the UCC and general public policy. They encourage investigation and preservation of evidence, and may even obviate the need for litigation, by promoting early settlement and preventing repetition of offending conduct. (See, Chase, Civil Litigation in New York, at 317-318.)
*295 Similarly, a contractual shortening of a Statute of Limitations also limits a plaintiffs right of action because it requires him to act more quickly than the law would have otherwise permitted. Generally intended to prevent stale claims which are difficult to defend, a shortened period encourages vigilance by both parties to a deposit contract, thus making continued fraud or wrongdoing less likely. As long as it is reasonable, and otherwise conforms with the requisites of contract law, such a shortened period of limitation is legally valid. (CPLR 201; Wayne Drilling & Blasting v Felix Indus., 129 AD2d 633 [2d Dept 1987]; see, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C201:2, at 57.)
Conditions precedent and shortened periods of limitation similar to those at issue here have been routinely accepted in the banking relationship, usually without extensive analysis. (See, New York Credit Men’s Adj. Bur. v Manufacturers Hanover Trust Co., 41 AD2d 912, supra; Cohen v Manufacturers Trust Co., 144 NYS2d 366.) Such provisions are not only compatible with statute and case law; they are in accord with public policy by limiting disputes in a society where millions of bank transactions occur everyday. Accordingly, the provisions at issue are valid, enforceable and binding on the parties.
ANALYSIS
PTA was under a contractual duty to notify MHT in writing of any forgery or signature not in accordance with the signature card within 14 days, and to commence suit within one year, from the mailing óf the statements. Plaintiff contends that it made a "good faith” attempt to "promptly” notify defendant of the irregularities after learning of them, but in so doing, tacitly admits that it did not comply with the requirements of the parties’ agreement. Thus, there is no triable issue as to whether such notification was made. At issue is whether, under the circumstances of this case, that duty was excused.
Plaintiff argues that the notification provisions are ambiguous, and simultaneously contends that the 14-day period should be measured from actual receipt, rather than mailing. Plaintiff is in error. The agreement is clear and unambiguous. The plain language of the agreement states that written notice must be given within 14 days of "delivery or mailing” (emphasis added). The use of the disjunctive "or” clearly *296 means that either depositing the statement in the mail or effecting personal delivery is alone sufficient to trigger the running of the 14-day notice period.[5] Both statute and case law are in accord with this interpretation. (See, UCC 4-406 [1]; 1-201 [38]; Webster Schott Bldg. v Manufacturers Hanover Trust Co., NYLJ, Dec. 13, 1968, at 16, col 7 [Sup Ct, Queens County], affd no opn 32 AD2d 744, lv denied 26 NY2d 611.)
Plaintiff claims that it was incapable of having given such notice as to the first statement, and should be deemed in compliance as to the second statement. Because of the alleged interception of the statements, plaintiff argues that they were first received by Carol Messina on January 27, 1984, and that plaintiff thereupon acted reasonably and promptly. PTA argues that it would be unfair, notwithstanding the contract, to hold it responsible for any prior actions which occurred inside the Messina home. Although this argument is superficially appealing, it cannot withstand scrutiny.
Plaintiff is an unincorporated association and can only act through its duly designated officers, who are its agents and fiduciaries. Whatever duties it owes to the bank, by contract or statute, must be fulfilled by its officers on its behalf. These duties were delegated to, and voluntarily assumed by, the treasurer. (See, PTA Constitution and By-Laws, art V, § 2 [c]; and the parties’ agreement.) Thus, Carol Messina had the obligation to both PTA and MHT to properly do everything needed to fulfill the PTA’s duties to the bank. Conversely, PTA is responsible to the bank for its treasurer’s acts and omissions. (See, Screenland Mag. v National City Bank, 181 Misc 454, supra; see also, UCC 3-406, Comment 7.)
Carol Messina was responsible for disbursing and accounting for all funds, keeping both blank and canceled checks and maintaining and reconciling all books. She had the duty to transmit and receive all communications between the bank and PTA. Thus, it was Carol Messina who was obligated to report to both the bank and PTA the absence of blank checks *297 and statements and the presence of forgeries and irregularities. Furthermore, she had to safeguard the checkbook, and assure that mail received at her home would not be intercepted by family members.[6]
One spouse is not an agent of another (see, City of New York v Chemical Bank, 122 Misc 2d 104) and cannot be held liable for a spouse’s independently wrongful act because of the marital relationship. Neither can a principal be held directly responsible for the independent torts or crimes of its agent’s spouse. Nevertheless, neither Carol Messina nor PTA can here claim nonreceipt or lack of knowledge because her husband allegedly intercepted the statements. PTA must be deemed to have known that which its agent, Carol Messina, knew, or should have known.[7] At least in their relationship with the bank, Carol Messina, and vicariously PTA, are bound by the undisputed mailing and delivery to the Messina home. The good faith, reasonableness and speed of PTA’s actions after January 27, 1984 are not material.
Finally, plaintiff argues that the bank’s payment of the checks was negligent, thereby relieving plaintiff of its duty to make timely notification. This argument misunderstands the nature of a condition precedent.[8]
*298 MHT was under a duty to use ordinary care in paying checks under the contract of deposit. It appears that such payment did violate the contract of deposit, and may well have been negligent.[9] Had the depositor given notice during the 14-day period and commenced this action within the year required by the agreement, the undisputed erroneous payment may well have constituted a breach of contract justifying a grant of reverse partial summary judgment in favor of the plaintiff, at least as to the three checks missing signatures. Whether or not the bank thereby acted negligently or otherwise breached the agreement cannot properly be decided at this time. Fulfillment of a condition precedent must always be demonstrated before, not after, liability is determined. If, as here, the condition precedent was not satisfied, the court is prevented from reaching the merits. Viewed somewhat differently, a condition precedent is an element of plaintiffs cause of action. While plaintiff need not plead performance of a contractual condition precedent (see, CPLR 3015 [a]), it still has the burden of proving performance at trial. Since performance was not proven here, plaintiffs entire claim is unprovable as a matter of law.
Some cases seem to indicate, in dicta, that summary judgment should be denied where there is evidence of the bank’s negligence. (See, New York Credit Men’s Adj. Bur. v Manufacturers Hanover Trust Co., 41 AD2d 912, supra; F. O. Provision Co. v Manowitz, index No. 17081/86, Sup Ct, Bronx County, *299 Jan. 22, 1987.)[10] Where summary judgment is sought on the ultimate issue of liability; where there is no condition precedent or Statute of Limitations problems barring the court from reaching the merits; and negligence or other breach is a triable factual issue, then summary judgment would clearly be inappropriate. Summary judgment is sought here not on the ultimate issue of responsibility for the apparently improper payment, but rather on the threshold issue of whether plaintiff is legally able to assert that claim. Thus, evidence of breach or negligence would be relevant only if plaintiff had a litigable claim; it is not relevant here. It neither excuses PTA from its contractual obligations nor bars summary judgment where there is no factual dispute as to the fulfillment of the condition precedent and period of limitation.
The court sympathizes with plaintiff’s members victimized by its treasurer’s dishonest spouse and its arguably negligent officers. Yet it would be an improper arrogation of power for this court to ignore the clear wording of statute and contract and effectively rewrite the parties’ agreement.
Established public policy choices support the result mandated by the legal principles discussed. The law assumes that the depositor, not the bank, can best prevent fraud by bearing ultimate responsibility for the actions of those it chose to act on its behalf. (See, UCC 4-406, Comment 3.) To the extent that this allocation of responsibility encourages depositor vigilance, it protects the honest depositor as much as the bank. If an empirical examination of bank practices discloses that the legal scheme fails to adequately serve these goals, and unfairly penalizes depositors, the system ought to be changed. (Cf., White and Summers, Uniform Commercial Code, at 656 [2d ed].) The separation of powers and basic democratic theory require that such change be effected by the Legislature, not by the judiciary.
CONCLUSION
Since PTA failed to comply with the condition precedent, it is barred from bringing this action against MHT. Additionally, because PTA failed to sue within the contractually delimited period, it is barred from suit as to the forgeries. MHT is *300 therefore entitled to judgment as a matter of law. Accordingly, this defendant’s motion for summary judgment is granted; plaintiffs request for reverse summary judgment is denied;[11] and the action is dismissed. Insofar as the third-party action asserts a claim against Carol and Lee Messina to the extent of any judgment against MHT, it is dismissed as academic. Dismissal is without prejudice to any other cognizable claims by PTA against the Messinas, by MHT against any other parties, or by PTA’s members against its then officers.[12]

. This warning is fully consistent with the provisions of the parties’ agreement and should be regarded only as an attempt to give additional notice. Unilaterally placing such an admonition on the statement could not alter the agreement of the parties or further limit the bank’s liability.

. Cf., Florea v Bank of New York (87 AD2d 526). Carol Messina’s admission that the statements were received at her home amounts to sufficient proof that the bank satisfied its contractual duty to mail the statements to plaintiff. Otherwise it would have been necessary to determine this issue at a hearing prior to deciding this motion. (See, CPLR 3212 [c]; see also, n 7, infra.)

. In her response to interrogatories, Carol Messina claims that she visited the bank some time after January 1, 1984 and advised an unnamed officer that she did not receive her December statement. She states that she was told that duplicates would be mailed to her. While she may have been negligent in not following up, the issue of her culpability in this regard need not be addressed here. (See, n 7, infra.)

. While MHT has impleaded the Messinas, PTA has apparently chosen not to sue them. Carol Messina was apparently served, but has not appeared; Lee Messina has apparently not been served since his whereabouts are unknown. Carol Messina was served with the instant motion; Lee Messina was not. (Cf., Rivera v Laporte, 120 Misc 2d 733.)

. While the boilerplate agreement appears on a standard printed form, one which is not ordinarily subject to discussion or negotiation between bank and depositor, plaintiff has not asserted either lack of notice or overreaching. Thus, the parties must be held to the plain meaning of their agreement. Measuring the 14 days from the time of receipt rather than mailing would seem a more fair time limit, especially given chronic post-office delay. Proving, rather than presuming, receipt however, would be impracticable, and would require the needlessly expensive and cumbersome device of certified mail for all bank correspondence.

. Whether or not PTA was independently negligent need not be determined here. Vesting both disbursing and auditing functions in the same individual may be customary in nonprofit voluntary organizations; it is imprudent and may be negligent. (See, UGC 3-406, Comment 7; White and Summers, Uniform Commercial Code, at 627-628 [2d ed].) Moreover, entrusting an agent with these responsibilities, knowing that the agent cannot assure security in her home, and knowing that her spouse is less than honest, at very least constitutes evidence of negligence. It has not been disputed that PTA and Carol Messina knew that Lee Messina had forged PTA checks on prior occasions, and made only partial restitution.

. Carol Messina knew that she was not in possession of the statements at a time when she knew she should have been. She should have known long before then that blank checks were missing.
Moreover, it appears that she was aware of her husband’s larcenous propensities. The third-party action alleges that both Carol and Lee Messina conspired together to commit the acts responsible for PTA’s loss. It cannot be determined from the record on this motion to what extent Carol Messina contributed to the loss, by negligence or otherwise. That issue is not now before this court.

. In Jewett v Manufacturers Hanover Trust Co. (48 Misc 2d 1094), the court held, after trial, that the bank was negligent for honoring two-signature checks with only one signature, and that such negligence relieved the depositor of the duty to give notice. The court in Jewett effectively disregarded the contractual notice provisions as being unnecessary, reasoning that the bank already had adequate notice of its obligations from the *298 signature card on file. In so doing, the court did not consider that the signature card and the notice provisions have different purposes. The signature card is part of the contract; the notice provisions require that a breach of that contract be promptly reported, at least in part, to prevent a repetition. In Jewett, the court found, after trial, that the failure to give notice did not cause a repetition. Based on the evidence at hand, this court cannot so conclude. Moreover, this court will not substitute its judgment for the undisputed intention of the parties by ignoring a significant provision which the parties knowingly included in their contract.

. Plaintiff here asserts that the bank’s action constituted gross negligence as a matter of law, yet proffers no evidence other than the undisputed fact of the payment over forgeries and missing signatures. Particularly when requesting reverse summary judgment, a plaintiff must come forward with more than conclusory statements. Indeed, it has been held that the fact of payment over forgery is alone insufficient to prove negligence as a matter of law. (Coine v Manufacturers Hanover Trust Co., 14 UCC Rep Serv 184, 186 [Sup Ct, NY County 1975].) Depending on such facts as the obvious appearance of the check, payment over a missing signature may well be negligent as a matter of law. This question need not be determined here; in any event, the evidence presented would be insufficient to decide it on these papers.

. In each case the courts did grant summary judgment, noting that plaintiffs failed to offer any evidence to indicate negligence or a lack of good faith by the bank. By implication, had such evidence been adduced, the courts would not have granted summary judgment.

. The court notes that plaintiff incorrectly sued in its own name, rather than in the name of its president or treasurer. (CPLR 1025; General Associations Law §§ 12, 13.) This defect was not raised by defendant; it is curable and not material to this decision.

. The third-party claim, originally brought under a separate index number (No. 20753/86), also contains a prayer for punitive damages "in the event MHT incurs damages and/or costs in the PTA’s action.” Since summary judgment was not sought on this basis this court will not determine whether it constitutes an independently viable claim and will not consider it on the merits.