**BASSE TRUCK LINE, INC., Appellant,**

v.

**FIRST STATE BANK, BANDERA, TEXAS, Del Rio Bank and Trust, and Bank One Texas, N.A., Appellees.**

No. 04–96–00379–CV.

Court of Appeals of Texas, San Antonio.

May 14, 1997.

Rehearing Overruled June 13, 1997.

Jerry N. Dennard, San Antonio, for Appellant.

Annalyn G. Smith, Wells, Pinckney & McHugh, P.C., San Antonio, Don Krause, Bayne, Snell & Krause, P.C., San Antonio, Richard C. Mosty, Wallace, Mosty, Machann, Jackson & Williams, P.C., Kerrville, for Appellees.

Before RICKHOFF, LOPEZ and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

This is a suit under the Uniform Commercial Code and Texas Deceptive Trade Practices Act on liability for cashing converted checks. Basse Truck Line ("Basse") sued Del Rio Bank and Trust ("Del Rio "), Bank One, Texas N.A. ("Bank One") and First State Bank, Bandera ("FSB") because they cashed checks presented by Basse's "faithless employee" who caused the checks to be issued, converted them and deposited them in an account with a name similar to the name of the named payee. The trial court granted summary judgment on all of Basse's claims and denied summary judgment on Basse's breach of contract action against its two depository banks. Because we decline to adopt the "mirror image" endorsement requirement in the faithless employee context, we affirm the judgment of the trial court.

In three points of error, Basse complains that the evidence was insufficient to support the banks' motions for summary judgment, that the trial court should have granted its summary judgment motion on its breach of contract claims against Bank One and Del Rio, and that the trial court improperly excluded from summary judgment evidence the assumed name certificates under which the employee allegedly carried out his scheme.

## FACTS

Basse had checking accounts with appellees, Del Rio and Bank One. In June of 1990, John E. Houchens, a Basse employee whose job duties included buying employment and liability insurance coverage, began presenting to the bookkeeping department false invoices to pay nonexistent insurance premiums. The firm's insurance carrier was named Texas Insurance Agency, Inc.; Houchens filed a DBA certificate in Bandera County in the name of "John E. Houchens DBA Texas Insurance" and had an endorsement stamp made up that read, "For Deposit Only TEXAS INSURANCE". He opened a bank account at appellee FSB in his name. He took the resulting checks and deposited them, with the endorsement stamp, in his personal bank account at FSB. (Houchens also kept up the payments on Basse's insurance.)

Although the scheme began in 1990, Basse stated that it discovered irregularities in November 1994; Houchens resigned in January 1995; sometime after that Basse uncovered the full scheme by which Houchens tapped its accounts for $776,649.07. Basse filed a civil action against Houchens and the three banks at issue here. The banks sought and won summary judgment; the action against Houchens was severed and is not part of this appeal.

## STANDARD OF REVIEW

■ The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549. If the order is general, without specifying the grounds on which the trial court granted summary judgment, the nonmoving party on appeal must negate any grounds on which the trial court

could have granted the order. *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970); *Sipes v. Petry & Stewart*, 812 S.W.2d 428 (Tex.App.—San Antonio 1991, no writ).

A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action is entitled to summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984). A defendant may also show entitlement to summary judgment by conclusively proving all elements of an affirmative defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

## THE "IMPOSTER" RULE

■ In its first point of error, Basse complains that the trial court should not have granted summary judgment in favor of the three banks. This broad point is sufficient to attack the grant of summary judgment on all possible grounds. *Malooly*, 461 S.W.2d at 121.

To show that the three banks are not entitled to summary judgment on its negligence and conversion claims, Basse must first overcome the statutory defense granted the banks under the Uniform Commercial Code: the "impostor" or "padded payroll" rule, found at TEX. BUS. & COM.CODE ANN. sec. 3.405 (Tex.UCC) (Vernon 1994).

Former TEX. BUS. & COM.CODE ANN. sec. 3.405 stated:

(a) An indorsement by any person in the name of a named payee is effective if

.　　.　　.　　.　　.

(3) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

Former section 3.405 puts the loss caused by the conduct of a "faithless employee" upon the employer, as a risk of his business enterprise, rather than the bank. *Clinton Weilbacher Builder v. Kirby State Bank et al.*, 643 S.W.2d 473, 476 (Tex.App.—San Antonio 1982, no writ). Comments to former UCC sec. 3.405 state that this is done be-

cause the employer is in a much better position to prevent such forgeries by reasonable care in the selection or supervision of employees. *Id.; see also* TEX. BUS. & COM.CODE ANN. § 2.403 cmt. 4 (Tex.UCC) (Vernon 1994). It operates by authorizing the banks to pay the checks presented under these circumstances; this has the effect of absolving them of liability for negligence and conversion.

It is uncontested that Houchens supplied Basse with the named payee and that he had no intention of Texas Insurance Agency having any interest in the checks in question. Basse instead contests the first prong of the statutory defense. He argues that Houchens' "TEXAS INSURANCE" stamp is not "indorsement in the name of the named payee" as required by the statute. In doing so, Basse urges us to adopt the "mirror image" rule for Texas; the banks urge us that an endorsement "substantially similar" to the named payee is sufficient. There is no Texas case on point; therefore we look to other sources.

■ We note first that the Legislature amended Article 3 of the Texas Uniform Commercial Code in 1995, essentially endorsing the banks' contention in this case that an endorsement "substantially similar" to the name of the payee on the obverse of the check is sufficient to pass good title to the check. Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4597–4598 (to be codified as an amendment to TEX. BUS. & COM.CODE ANN. sec. 3.404 and 3.405). This change to the UCC was promulgated in part to disapprove of court decisions adopting a "mirror image" interpretation of the endorsement requirement. *See* TEX. BUS. & COMM. CODE ANN. § 3.404 cmt. 1 (Tex.UCC) (Vernon Supp.1997).

Basse contends the 1996 amendments to the Texas UCC represented a "radical change" from previous law, that the indorsement was in no way similar to the payee's name on the obverse of the check, and therefore the banks could not avail themselves of the defense to liability contained in this section. However, as noted previously, there have been no Texas cases interpreting this requirement.

The UCC in effect at the time this action accrued allowed the bank to pay a check when a payee's name or endorsement is misspelled, in the name of facilitating negotiability. TEX. BUS. & COM.CODE ANN. § 3.203 (Tex. UCC) (Vernon 1994). The UCC also stated that an instrument was payable to order when it was payable to "any person therein specified with reasonable certainty." TEX. BUS. & COM.CODE ANN. § 3.110 (Tex.UCC) (Vernon 1994). We think it unreasonable to say that the code demands a mirror-image indorsement in one section of the code while allowing leeway in two other sections of the code. *See also* Daniel E. Murray, *Check Scams—The Facts Remain The Same, Only the Law Changes,* 49 U. MIAMI L.REV. 607, 612–613 (1995) (criticizing "mirror image" rule).

In *British Caledonian Airways v. First State Bank of Bedford,* 819 F.2d 593 (5th Cir.1987), a federal case interpreting Texas law, one of the issues was an endorsement in the name of "Mary Toll Charter Services" when the actual name of the company was Mary *Tull* Charter Services. The court held that "[i]t would contravene the stated purpose of section 3.405 to make the bank's liability hinge on the fortuitous circumstance of whether a minor mistake in spelling a payee's name" appeared on the front or back of the check. *Id.* at 599–600; *see also Western Casualty & Surety Co. v. Citizens Bank of Las Cruces,* 676 F.2d 1344 (10th Cir.1982).

We find Basse's call for us to adopt a "mirror image" rule would be immediately obsolete, considering the legislature's action, and does not comport with commercial practice. Even if the banking industry could employ computer verification to match up every endorsement and every payee, the human element would still intervene to cause breakdowns in the process. (As pointed out by counsel for Del Rio, some of the checks Houchens used to continue Basse's insurance coverage would not have been properly paid under a "mirror image" rule.) When millions of checks are paid every day, it would be unduly burdensome to adopt a "mirror image" requirement just to protect companies from their own errant employees. We therefore hold that an endorsement need only be

substantially similar to the named payee in order to qualify under the previous TEX. BUS. & COM.CODE ANN. sec. 3.405 statutory defense.

In light of this holding, we find Del Rio, Bank One and FSB have established all elements of their statutory defense as a matter of law. The summary judgment as pertains to Basse's negligence and conversion claims against the banks is affirmed.

## DTPA CLAIMS

Basse also asserts causes of action against its depository banks—Del Rio and Bank One—under the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM.CODE ANN. sec. 17.46 (Vernon 1987 & Supp.1997). We are unpersuaded.

■ Violation of a promise to pay checks in accordance with the depository agreement is a breach of the agreement, not a breach of an implied warranty; therefore such a breach is not actionable under the DTPA. *La Sara Grain v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984). It likewise is not a deceptive trade practice because a bank customer is fully informed of the bank's actions by the bank's return of plaintiff's cancelled checks with the statement each month. *Id.* at 566.

However, Basse contends the banks violated the Texas Deceptive Trade Practices Act because they 1) paid instruments in violation of their depository agreements 2) while unlawfully attempting to limit their liability for their wrongdoing by imposing a short (14– to 90–day) statute of limitations.

Basse argues this constitutes an attempt to excuse any lack of good faith or of due care on their part in their depository agreements, knowing that such clauses would be void as against public policy. We therefore look to whether such short statutes of limitation are void as against public policy.

■ The parties to a depository agreement may vary by agreement the terms of their relationship, except that no agreement can disclaim a banks's responsibility for its own lack of good faith or failure to exercise ordinary care. TEX. BUS. & COM.CODE ANN. § 4.103 (Tex.UCC) (Vernon 1994). And

while a Texas court has not passed on the validity of a shortened statute of limitations in this situation, courts in other jurisdictions have approved them. *See, e.g., Parent Teacher Ass'n, Public School 72 v. Manufacturers Hanover Trust Co.,* 5 UCC Rep. Serv. 679, 138 Misc.2d 289, 524 N.Y.S.2d 336 (N.Y.Civ.Ct.1988); *Retail Shoe Health Comm'n v. Manufacturers Hanover Trust Co.,* 160 A.D.2d 47, 558 N.Y.S.2d 949 (1990); *Jamison v. First Georgia Bank,* 193 Ga.App. 219, 387 S.E.2d 375 (1989).

In *Parent Teacher Ass'n,* the court dealt with a parent-teacher organization whose funds were embezzled by a faithless treasurer and her husband. The agreement between the bank and the organization contained a 14–day limitations period; unless the bank was notified within 14 days of mailing or delivery of any statement of account of any claims of errors or unauthorized payment, the bank would not be liable for such unauthorized payments. The agreement also required suit to be filed within one year of delivery or mailing of the statement with the questionable payments.

The court, noting that the UCC has always tried to "harmonize the law with its view of commercial reality," held that these deadlines did not constitute an unlawful disclaimer of the bank's liability. Instead, it described them as a lawful condition precedent:

> A condition precedent does limit an aggrieved party's claim because it requires that party to first perform a specified act prior to commencing an action. Long known to the common law, conditions precedent are consistent with the goals of the UCC and general public policy. They encourage investigation and preservation of evidence, and may even obviate the need for litigation by promoting early settlement and preventing repetition of the offending conduct ... a shortened period encourages vigilance by both parties to a deposit contract, thus making continued fraud or wrongdoing less likely. As long as it is reasonable, and otherwise conforms with the requisites of contract law, such a shortened period of limitations is legally valid. [citations omitted] Contractual pre-

cedent and shortened periods of limitations similar to those at issue here have been routinely accepted in the banking relationship ... Such provisions are not only compatible with statute and caselaw; they are in accord with public policy by limiting disputes in a society where millions of bank transactions occur every day.

*Parent Teacher Ass'n,* 524 N.Y.S.2d at 340, 5 UCC Rep. Serv.2d at 685–686.

We find this reasoning persuasive. We hold that the shortened statutes of limitations contained in Bank One's and Del Rio's depository agreements are not contrary to public policy. Therefore, any claims Basse may have under the DTPA are untenable. The summary judgment as to Basse's DTPA claims is sustained.

Basse's first point of error is overruled.

## BASSE'S CONTRACT CLAIMS

■ In Basse's second point of error, it claims the trial court erred in not granting its motion for summary judgment on its breach of contract claims against Del Rio and Bank One. Because both parties move for summary judgment, and one party's order was granted and the other's overruled, an appellate court may review the denied order to see whether it should have been granted. *Garcia v. City of Lubbock,* 634 S.W.2d 776, 780 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.)

Because we determined that Del Rio and Bank One were authorized to pay the checks in question under TEX. BUS. & COM.CODE ANN. sec. 3.405 (Tex.UCC) (Vernon 1994), we hold the trial court did not err in finding they did not breach their depository agreement with Basse.

Basse's second point of error is overruled.

Because these points of error are dispositive of the appeal, we need not reach Basse's challenge to the trial court's exclusion of evidence under point of error three.

## CONCLUSION

The judgment of the trial court is affirmed.