*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★        ★ ★ ★



# MEMORANDUM OPINION

No. 04-07-00503-CV

CHRISTA C. **LENK**, Administratrix of the Estate of John Albert Thompson,
Appellant

v.

**GUARANTY BANK,**
Appellee

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2003-PC-2654
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:    July 2, 2008

REVERSED AND RENDERED

This is an appeal from an order granting Guaranty Bank's partial motion for summary judgment and denying the administratrix of the estate of John Albert Thompson, Christa C. Lenk's ("Lenk"), partial motion for summary judgment. We reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2000, John Albert Thompson ("Thompson") died leaving approximately $3,026.33 in an account at Guaranty Bank. On or about March 23, 2000, Melvyn Morris Spillman

("Spillman"), a former Bexar County clerk, falsely represented to Guaranty Bank that he was Thompson's nephew and the administrator for Thompson's estate. Spillman provided forged letters of administration to Guaranty Bank, as well as a death certificate, and requested that he be named on Thompson's account. After Guaranty Bank named Spillman on the account, Spillman made two deposits: one for $3,356.05; and a second for $164,064.99. The check for $164,064.99 was made payable to "the Estate A. [sic] Thompson, Mel Spillman, Administrator." Spillman then began withdrawing funds and by August 17, 2001, had withdrawn all but $40.00 of the funds on deposit in Thompson's account. As a result, on or about September 13, 2001, the account was closed.

In September of 2003, after the fraudulent schemes of Spillman came to light, Lenk was appointed to serve as the administratrix of Thompson's estate. On June 4, 2005, Lenk made written demand upon Guaranty Bank for $163,064.99 "plus any other sums belonging to Mr. Thompson on deposit since the date of his death on January 30, 2000." When Guaranty Bank informed Lenk there were no funds left in Thompson's account to disburse, Lenk sued for breach of the deposit agreement, seeking actual damages, interest, and attorneys' fees. A separate suit was also filed against Spillman, alleging fraud, theft and conversion; however, Guaranty Bank joined Spillman to the suit filed against it, arguing that Spillman was the sole cause of Lenk's alleged damages.

Both parties filed motions for summary judgment; the trial court denied Lenk's partial motion for summary judgment but granted Guaranty Bank's motion for partial summary judgment. Spillman was subsequently nonsuited, resulting in a final, take-nothing summary judgment in favor of Guaranty Bank upon Lenk's claim for breach of the deposit contract.

In two issues on appeal, Lenk argues that the trial court erred in granting Guaranty Bank's motion for summary judgment and in denying her motion for summary judgment.

## STANDARD OF REVIEW

When the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the judgment if any of the theories raised in the motion for summary judgment are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

To obtain a traditional summary judgment, a party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the respondent. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 549. In addition, we must assume all evidence favorable to the respondent is true. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 548-49. A defendant is entitled to summary judgment only if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). Once the movant has established a right to summary judgment, the burden shifts to the respondent to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Here, Lenk is appealing not only the trial court's order granting Guaranty Bank's motion for summary judgment, but also the trial court's order denying her motion for summary judgment. When both sides move for summary judgment on the same issue and the court grants one but denies

the other, the denial is reviewable as a part of the appeal from the granted motion. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Basse Truck Line, Inc. v. First State Bank,* 949 S.W.2d 17, 22 (Tex. App.–San Antonio 1997, writ denied). If we determine that the trial court erred, we render the judgment the trial court should have rendered after considering the summary judgment evidence presented by both sides, and determining all questions presented. *See Valence Operating Co.*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000)).

### APPLICABLE LAW

A deposit contract between a bank and an account holder is considered a contract in writing for all purposes. TEX. FIN. CODE ANN. § 34.301 (Vernon 1998 & Supp. 2007). The elements of a breach of a contract claim are: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.,* 179 S.W.3d 51, 61 (Tex. App.–San Antonio 2005, pet. denied); *McLaughlin, Inc. v. Northstar Drilling Tech., Inc.*, 138 S.W.3d 24, 27 (Tex. App.–San Antonio 2004, no pet.). In suits to recover deposits, the bank has the burden of proving payment under authority from the depositor and is obligated to pay out funds on deposit according to the directions of the depositor. *See Mesquite State Bank v. Prof'l Inv. Corp.*, 488 S.W.2d 73, 75 (Tex. 1972).

Bank deposits are typically classified as either "general deposits" or "special deposits." *See Hodge v. Northern Trust Bank of Texas, N.A.,* 54 S.W.3d 518, 522 (Tex. App.–Eastland 2001, pet. denied) (citing *Bandy v. First State Bank*, 835 S.W.2d 609, 618-19 (Tex. 1992)). A general deposit

of money with a bank typically creates a creditor-debtor relationship between the depositor and the bank with title to the money passing to the bank, subject to the depositor's demand for payment. *See id.*; *see also Mesquite State Bank*, 488 S.W.2d at 75-76. A "special deposit," on the other hand, creates a bailor-bailee relationship, and the bank keeps or conveys identical property or funds entrusted to it. *See Hodge*, 54 S.W.3d at 522.

"[W]hen a bank makes a 'wrongful payment' from a general deposit, there is no violation of the deposit agreement because the bank has title to the funds." *Id.* at 525-26. This is because the general depositor is a creditor of the bank, and it is only upon the bank refusing a demand for payment of the general deposit that the bank breaches its relationship with the depositor. *See id.* at 526. Thus, an action for breach of a depository agreement does not begin to run against the depositor until demand is made and refused or an adverse claim is asserted. *See id.* at 524 (citing *Hinds v. Southwestern Sav. Ass'n*, 562 S.W.2d 4 (Tex. Civ. App.–Beaumont 1977, writ ref'd n.r.e.).

## DISCUSSION

Lenk initially filed a motion for partial summary judgment, asserting that "[t]he Summary Judgment evidence in this case establishes that there is no genuine issue of material fact regarding [Lenk's] claim against [Guaranty Bank], and that [Lenk] is entitled to judgment upon her claim of breach of contract as a matter of law." Specifically, Lenk maintained that following Thompson's death on January 30, 2000, she was the only person to qualify as the personal representative of the estate, having done so on September 24, 2003. Therefore, Lenk argued, on June 4, 2005, when she made written demand upon Guaranty Bank for "all sums on deposit or deposited in Decedent's

account on and since the date of his death" and Guaranty Bank refused to pay, Guaranty Bank breached the terms of the depositor's agreement as a matter of law.

Guaranty Bank admits that the parties had a valid contract and that Thompson performed or tendered performance of the contractual obligation by virtue of his deposit of money into the bank; however, Guaranty Bank disputes that it breached this contract or that it caused the damages in question. However, Thompson's deposit was a general deposit of money creating a creditor-debtor relationship between Thompson and Guaranty Bank with title to the money passing to Guaranty Bank, subject to Thompson's demand for payment. *See Hodge,* 54 S.W.3d at 522. Upon Thompson's death, Guaranty Bank became indebted to Thompson's estate in the amount of the deposit. *Young v. Marlin Nat'l Bank*, 458 S.W.2d 506, 507 (Tex. Civ. App. 1970, writ ref'd n.r.e.). Therefore, Guaranty Bank was required to ensure that payment was made to Thompson's duly appointed legal representative, and "payment to any other person [was] at the peril of the bank." *See id.* (holding that bank's payment to adjudicated heirs of the deceased did not relieve the bank of its liability to the duly appointed legal representative of the deceased depositor).

Thus, when Lenk, the administrator for Thompson's estate, and "duly appointed legal representative," made a demand for payment, Guaranty Bank was required to tender the amount of the deposit to Lenk. *See id.* Guaranty Bank failed to do so but nevertheless, argues that no breach resulted from this failure because when demand for payment was made, Thompson's account was closed and no funds remained in the account. However, in this suit to recover deposits, the burden was on Guaranty Bank to prove payment under Thompson's authority. *See Mesquite State Bank*, 488 S.W.2d at 75. Guaranty attempted to meet this burden by presenting evidence that it relied upon

forged documents presented by Spillman in paying Spillman the funds in Thompson's account. Nevertheless, as Lenk, and not Spillman, was the duly appointed legal representative, Guaranty Bank's payment to Spillman did not relieve Guaranty Bank of its indebtedness to Thompson's estate in the full amount of the deposit. *See Young*, 458 S.W.2d at 507. Finally, Guaranty Bank asserts that because the bulk of the money was deposited after Thompson's death by Spillman who later withdrew this money, the "bank cannot be in debt to the customer for more than what the customer has deposited into his account." We disagree.

It is well settled that where a person makes a deposit in the name of another, the bank becomes the debtor of the person for whom and in whose name the deposit is made, and the funds cannot be withdrawn by the person making the deposit unless it is proven that he, instead of the person in whose name the deposit was made, is the actual owner of the funds. *Peavy-Moore Lumber Co. v. First Nat'l Bank*, 133 Tex. 467, 128 S.W.2d 1158, 1162 (Tex. Comm'n App. 1939). Further, once the depositor, or his duly appointed legal representative, proves the balance in his account and sues the bank for this amount, the bank must justify its withdrawal from the depositor's account. *Sears v. Continental Bank & Trust Co.*, 562 S.W.2d 843, 844 (Tex. 1977) (citing *Mesquite State Bank*, 488 S.W.2d at 75-76.

Here, the summary judgment evidence reflects that the $164,064.99 check from Charles Schwab, that was deposited into Thompson's account by Spillman, was payable to "The Estate A. Thompson, Mel Spillman, Administrator." And although it is unclear to whom Spillman's first deposit, in the amount of $3,356.05, was made payable to, it was clearly deposited into the estate's account. Thus, the funds belonged to Thompson's estate and should only have been paid to the duly

appointed legal representative of Thompson's estate, which, in this case, was Lenk rather than Spillman. *See Peavy-Moore Lumber Co.*, 133 Tex. at 476, 128 S.W.2d at 1162; *Young*, 458 S.W.2d at 507. As no evidence was presented controverting the estate's ownership of the funds, Lenk was entitled to recover "all sums on deposit or deposited in Decedent's account on and since the date of his death." This amount accurately reflects the proper measure of damages. *See Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888-89 (Tex. App.–Dallas 2004, pet. denied) (explaining that plaintiff suing for breach of contract can recover the benefit of the bargain by putting the plaintiff in as good a position as it would have been if the contract had been performed).

## CONCLUSION

We conclude that Lenk established the elements of a breach of contract case as a matter of law. Accordingly, we reverse the trial court's judgment and render judgment for Lenk, Administrator of the Estate of Thompson, in the amount of $148,430.28.[1]

Karen Angelini, Justice

---

[1]Appellant states in her brief that although the amount originally claimed was $168,371.04, a written trial amendment was offered and agreed to reducing the amount of plaintiff's claim to $148,430.28.