Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-07-00828-CV

Christa C. **LENK**, Administratrix of the Estate of Mickey Carl Marcus,
Appellant

v.

**JEFFERSON STATE BANK**,
Appellee

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2003-PC-2655
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed: March 11, 2009

REVERSED AND REMANDED

This is an appeal from an order granting Jefferson State Bank's motion for summary judgment and denying the motion for summary judgment filed by the administratrix of the Estate of Mickey Carl Marcus, Christa C. Lenk ("Lenk"). We reverse the trial court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

On March 7, 2000, Mickey Carl Marcus died leaving $22,863.68 in an account at Jefferson State Bank. In April 2000, Melvyn Morris Spillman, a former Bexar County clerk, presented false Letters of Administration on the Estate of Mickey Carl Marcus to Jefferson State Bank. He was then given complete control and signatory authority over the bank account. Spillman directed Jefferson State Bank to send all future bank statements to his address, rather than to the deceased's address.

In May 2000, Spillman deposited a number of checks totaling $164,444.29 into the bank account. By January 31, 2001, Spillman had withdrawn all but $903.96 from the account.

In September 2003, after the fraudulent schemes of Spillman came to light, Lenk was appointed to serve as the administratrix of Mickey Carl Marcus's estate. On June 3, 2005, Lenk made written demand upon Jefferson State Bank for the sums that had been deposited into Marcus's account and that had been withdrawn or paid therefrom based on the fraudulent actions of Spillman, which Lenk claimed totaled $185,785.55. Jefferson State Bank refused to pay the amount requested. Lenk then sued Jefferson State Bank for breach of its deposit contract. Both Lenk and Jefferson State Bank filed motions for summary judgment; the trial court denied Lenk's motion and granted Jefferson State Bank's motion. In two issues on appeal, Lenk argues that the trial court erred in granting Jefferson State Bank's motion for summary judgment and in denying her motion for summary judgment.

## STANDARD OF REVIEW

To obtain a traditional summary judgment, a party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Randall's Fook Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.

1995). When both sides move for summary judgment on the same issue and the trial court grants one but denies the other, the denial is reviewable as a part of the appeal from the granted motion. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Basse Truck Line, Inc. v. First State Bank*, 949 S.W.2d 17, 22 (Tex. App.—San Antonio 1997, writ denied). Further, when the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the judgment if any of the theories raised in the motion for summary judgment are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). And, we review the trial court's ruling on a motion for summary judgment under the usual standard of review. *See Randall's Food Mkts.*, 891 S.W.2d at 644.

## DISCUSSION

A deposit contract between a bank and an account holder is considered a contract in writing for all purposes. TEX. FIN. CODE ANN. § 34.301(a) (Vernon Supp. 2008). The elements of a breach of contract claim are (1) a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61 (Tex. App.—San Antonio 2005, pet. denied). In suits to recover deposits, the bank has the burden of proving payment under authority from the depositor and is obligated to pay out funds on deposit according to the directions of the depositor. *See Mesquite State Bank v. Prof'l Inv. Corp.*, 488 S.W.2d 73, 75 (Tex. 1972).

Bank deposits are typically classified as either "general deposits" or "special deposits." *See Hodge v. N. Trust Bank of Tex., N.A.*, 54 S.W.3d 518, 522 (Tex. App.—Eastland 2001, pet. denied). A general deposit of money with a bank typically creates a creditor-debtor relationship between the

depositor and the bank with title to the money passing to the bank, subject to the depositor's demand for payment. *See id.* A special deposit, on the other hand, creates a bailor-bailee relationship, and the bank keeps or coveys identical property or funds entrusted to it. *See id.* "[W]hen a bank makes a 'wrongful payment' from a general deposit, there is no violation of the deposit agreement because the bank has title to the funds." *Id.* at 525-26. This is because the general depositor is a creditor of the bank, and it is only upon the bank refusing a demand for payment of the general deposit that the bank breaches its relationship with the depositor. *See id.* at 526. Thus, an action for breach of a depository agreement does not begin to run against the depositor until demand is made and refused or an adverse claim is asserted. *See id.* at 524.

In her brief, Lenk argues that the trial court should have granted her motion for summary judgment because she proved that Jefferson Bank breached the depository agreement as a matter of law. Thus, Lenk argues that when she, the duly appointed administrator for the estate, made a demand for payment, Jefferson Bank was required to tender the amount of the deposit to Lenk. *See Lenk v. Guaranty Bank*, No. 04-07-00503-CV, 2008 WL 2602121, at *4 (Tex. App.—San Antonio 2008, pet. filed). Jefferson Bank refused to tender the amount to Lenk, but argues that no breach occurred because it tendered the amount to Spillman in reliance on Section 186 of the Texas Probate Code. Further, Jefferson Bank argues that Lenk's action is barred by Section 4.406 of the Texas Business and Commerce Code.

*A.      Section 186 of the Texas Probate Code*

In its motion for summary judgment and on appeal, Jefferson State Bank asserts that Section 186 of the Texas Probate Code provides it with a defense to Lenk's claim for breach of depository agreement. Section 186 provides that letters of administration "shall be sufficient evidence of the

appointment and qualification of the personal representative of an estate and of the date of qualification." TEX. PROB. CODE ANN. § 186 (Vernon 2003). Thus, Jefferson State Bank argues that it could properly rely on Spillman's false letters of administration pursuant to Section 186.

In *Lenk v. Guaranty Bank*, No. 04-07-00503-CV, 2008 WL 2602121 (Tex. App.—San Antonio 2008, pet. filed), a similar case involving Spillman's fraudulent actions, we fully considered this issue of whether Section 186 of the Probate Code allows a bank to rely on fraudulent letters of administration. We concluded it did not. *See id*. at *4. We explained that although the bank attempted to meet its burden of proving that it had not breached the depository agreement by relying upon the forged letters of administration, because Spillman was not a duly appointed legal representative, the bank's payment to Spillman did not relieve the bank of its indebtedness to the estate in the full amount of the deposit.[1] *Id.* Following *Lenk v. Guaranty Bank*, we hold that Jefferson Bank cannot rely on Spillman's fraudulent letters of administration to relieve it of its indebtedness to the Estate of Mickey Carl Marcus in the full amount of the deposit. *See id.*

B. *Section 4.406 of the Texas Business and Commerce Code*

Jefferson State Bank also argues that Lenk is barred from recovering by Subsection 4.406(f) of the Texas Business and Commerce Code. Subsection 4.406(f) provides the following:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year *after the statement or items are made available to the customer (Subsection(a))* discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. . . .

---

[1] We recognize that although fully briefed and considered by the court, in our opinion in *Lenk v. Guaranty Bank*, when we stated that Guaranty Bank "attempted to meet this burden by presenting evidence that it relied upon forged documents presented by Spillman in paying Spillman the funds in Thompson's account," we did not expressly state that Guaranty Bank was relying on Section 186.

Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ Aɴɴ. § 4.406(f) (Vernon 2002) (emphasis added). Thus, a customer has a duty to report any unauthorized signatures within one year of the bank sending the customer statements or making the items available to the customer pursuant to Subsection 4.406(a). Subsection 4.406(a) provides,

> A bank that *sends or makes available* to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. . . .

*Id.* § 4.406(a) (emphasis added).

Here, Jefferson Bank argues that it complied with Subsection 4.406(a) when it mailed statements to Spillman.[2] However, because Spillman was not the duly appointed legal representative, *see Lenk*, 2008 WL 2602121, at \*4, he was not the "customer." Thus, Jefferson Bank's act of sending statements to Spillman's address did not trigger the customer's duty to report unauthorized signatures pursuant to Subsection 4.406(f). And, there is no evidence in the record that Jefferson Bank ever sent the statements to Lenk. Nevertheless, Jefferson Bank argues that it made the statements available to Lenk because a person presenting appropriate credentials could either obtain account statements at its branch office or access those statements online. Thus, Jefferson Bank argues that when Lenk was appointed administratrix, she should have come to the bank and demanded the statements or asked to see them online. We decline to read into Section 4.406 that the appointment of an administrator fulfills the bank's duties to send or make available statements under Subsection 4.406(a). *See First Citizens Bank v. All-Lift of Ga., Inc.*, 555 S.E.2d 1, 3 (Ga. Ct. App.

---

[2] The account statements at issue are those for the months of April, May, June, July, and August 2000. Marcus died in March 2000, and the statement for that date contains the notation "Mickey Carl Marcus, Do Not Mail – Deceased, Deliver to Customer Ser." On April 18, 2000, Spillman presented the fraudulent letters of administration, and was able to change the name and address on the account.

2001) (holding that under UCC 4.406, "a bank does not make statements available within the meaning of this Code section by merely holding statements and doing nothing more" and explaining that "[a]dopting the bank's position would make the timing provisions of this Code section exceedingly difficult to apply and enforce."). Here, the only evidence presented was that Jefferson Bank mailed the statements at issue to Spillman at his address. There is no evidence that Jefferson Bank ever complied with its duties under Subsection 4.406(a). Thus, Subsection(f) does not apply.[3]

Jefferson Bank also argues that Lenk's claim is barred because Marcus and Jefferson Bank contractually agreed to modify Subsection 4.406(f)'s one-year notice period to sixty days. However, because Subsection 4.406(f) does not apply, any contractual modification of the notice period would also not apply.

## CONCLUSION

The trial court erred in granting summary judgment in favor of Jefferson Bank and should have granted summary judgment in favor of Lenk. Therefore, we reverse the judgment of the trial court and remand the cause to the trial court for entry of judgment consistent with this opinion.

Karen Angelini, Justice

---

[3] Because Subsection 4.406(f) was never triggered, we need not reach the issue of Lenk's actual knowledge.