Jerrold A. BOROWSKI and Jerrold A. Borowski, Personal Representative of the Estate of Anthony P. Borowski, Plaintiffs-Appellants,

v.

FIRSTAR BANK MILWAUKEE, N.A., Defendant-Respondent,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and Allstate Insurance Company, Defendants.

Court of Appeals

No. 96–3277. *Oral argument January 8, 1998.—Decided February 10, 1998.*

(Also reported in 579 N.W.2d 247.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James J. Winiarski* of Milwaukee. There was oral argument by *James J. Winiarski*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Andrew N. Herbach* of *Howard, Solochek & Weber, S.C.*, of Milwaukee. There was oral argument by *Andrew N. Herbach*.

Before Fine, Schudson and Curley, JJ.

FINE, J. Jerrold A. Borowski, individually and as personal representative of the estate of his father, Anthony P. Borowski, appeals from the trial court's grant of summary judgment to Firstar Bank Milwaukee dismissing Borowski's negligence action against Firstar Bank. Borowski claimed that Firstar Bank negligently paid forged checks drawn on both the estate's account and his personal account by Lisa Kaczmarek, the woman whom he thought he was going to marry, and that Firstar Bank negligently honored other requests for money she made, including forged notes that asked Firstar Bank to send cashier's checks to Borowski's home, where she intercepted them. The trial court held that Borowski did not comply with his contractual obligation to timely notify Firstar Bank that there was something wrong, and that this was a condition precedent to Borowski's suit against Firstar Bank. We affirm in part and reverse in part.

Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if

not, whether a party is entitled to judgment as a matter of law. RULE 802.08(2), STATS.; *U.S. Oil Co., Inc. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Although assisted by the trial court's written decision, our review of a trial court's grant of summary judgment is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

The facts material to this appeal are not disputed. Borowski maintained two accounts with Firstar Bank—his account and the account for his father's estate. According to an affidavit submitted to the trial court by Borowski in opposition to Firstar Bank's motion for summary judgment, Kaczmarek "systematically took approximately $100,000" from the estate's account with Firstar Bank, and "approximately $50,000" from his personal account with Firstar Bank. Borowski's affidavit accused Kaczmarek of using "forged checks, telephone transfers, and forged hand-written notes which she left in the overnight depository boxes at Firstar's branch banks, requesting that they send cashiers check[s] for various sums" to him, which she intercepted.

This appeal is governed by provisions of Wisconsin's Uniform Commercial Code that were in effect during the time relevant to this appeal, specifically Chapter 404, STATS., 1991–92.[1] Section 404.406(4), STATS., 1991–92, relieved a bank of liability for a customer's "unauthorized signature or any alteration" on an "item" if the customer did not timely "discover and report" it.[2] The period specified in § 404.406(4) for such discovery and report is "within one year from the time

---

[1] Chapter 404, STATS., was amended by 1995 Wis. Act 449, effective August 1, 1996. 1995 Wis. Act 449, §§ 100, 101.

[2] Section 404.406(4), STATS., 1991–92, read in full:

the statement and items are made available to the customer." As the trial court recognized, this establishes a precondition to a customer's lawsuit against a bank. *See Jensen v. EssexBank*, 483 N.E.2d 821, 822 (Mass. 1985) (collecting cases).

Section 404.406(4), STATS., 1991–92, and other provisions in Chapter 404, can be modified by agreement between the bank and the customer. Section 404.103(1), STATS., 1991–92.[3] Firstar Bank claims that agreements between Firstar Bank and Borowski

> Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (sub. (1)) discover and report the customer's unauthorized signature or any alteration on the face or back of the item or does not within 3 years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

This provision is now found at § 404.406(6), STATS., 1995–96, and has been modified as follows:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year ~~from the time~~ after the statement ~~and~~ or items are made available to the customer ~~(sub. 1))~~ discover and report the customer's unauthorized signature on or any alteration ~~on the face or back of the item or does not within 3 years from that time discover and report any unauthorized indorsement~~ on the item is precluded from asserting against the bank ~~such~~ the unauthorized signature ~~or indorsement~~ or such alteration. If there is a preclusion under this subsection, the payer bank may not recover for breach of warranty under s. 404.208 with respect to the unauthorized signature or alteration to which the preclusion applies.

1995 Wis. Act 449, § 84 (additions indicated by underlining, deletions indicated by interlineation). There is no substantive difference for the purpose of this appeal between § 404.406(4), STATS., 1991–92, and § 404.406(6), STATS. All references to "§ 404.406(4)" are to the 1991–92 edition of the statutes.

[3] Section 404.103(1), STATS., 1991–92, provided:

reduced § 404.406(4)'s one-year period to fourteen days.[4] There are two such provisions—one for Borowski's personal account, and another for the estate's

> The effect of the provisions of this chapter may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.

1995 Wis. Act 449, § 13 amended it to provide:

> The effect of the provisions of this chapter may be varied by agreement ~~except that no agreement can~~, but the parties to the agreement cannot disclaim a bank's responsibility for its ~~own~~ lack of good faith or failure to exercise ordinary care or ~~can~~ limit the measure of damages for ~~such~~ the lack or failure ~~; but~~. However, the parties may determine by agreement ~~determine~~ the standards by which ~~such~~ the bank's responsibility is to be measured if ~~such~~ those standards are not manifestly unreasonable.

*See* § 404.103(1), STATS., 1995–96 (additions indicated by underlining, deletions indicated by interlineation). There appears to be no substantive change.

[4] Borowski's main brief on this appeal does not argue that the agreements were unlawful "contracts of adhesion." *See Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212–213, 341 N.W.2d 689, 691–692 (1984) (discussing concept). Borowski's reply brief has a passing and wholly undeveloped assertion that appears to contend that the agreements were not bargained-for. We consider neither arguments that are undeveloped, *see Barakat v. Department of Health & Soc. Servs.*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398 (Ct. App. 1995), nor arguments that are raised for the first time in an appellant's reply brief, *see Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508, 512 n.2 (Ct. App. 1981). Accordingly, we do not discuss or decide whether the agreements were contracts of adhesion. Significantly, the concurrence/dissent seems to rely on these legal theories when it notes that "most people . . . would be unaware of and surprised by" the fourteen-day period. Con-

account. The provisions are not identical. The first, applicable to the estate's account, reads:

> Review your statement promptly. You must inform us of an unauthorized signature or alteration on an item within 14 days after we send or make available to you your statement and items or copies of the items. If you do not, you lose any claim you have against us due to an unauthorized signature or alteration. You also lose any claim against us on any later item paid after the 14-day period but before we receive your notice if the item was signed or altered by the same unauthorized party.

The second, applicable to Borowski's personal account, reads:

> You will promptly inspect Account statements. If you do not notify us of an unauthorized or altered item shown on your statement within fourteen (14) days of the statement date, you will lose any claim against us with regard to that item and any later items signed or altered by that same unauthorized party.

The agreement in connection with the estate's account required notification to Firstar Bank "of an unauthorized signature or alteration on an item *within 14 days after we send or make available to you your statement and items or copies of the items.*" (Emphasis added.) The agreement in connection with the Borowski's personal account required notification to Firstar Bank "of an unauthorized or altered item shown on your statement *within fourteen (14) days of the statement date.*" (Emphasis added.) As explained below, these two

---

currence/dissent op. at 580–81. We leave these issues for another day.

clauses result in the barring of all of Borowski's claims against Firstar Bank except those claims that he asserts on the estate's behalf in connection with the cashier's checks sent by Firstar Bank in response to Kaczmarek's handwritten requests.

■

1. Borowski does not point to anything in the record that disputes Firstar Bank's evidence that the statements and cancelled checks for each of the two accounts were sent to him in due course, consistent with Firstar's custom and practice. *See* RULE 904.06, STATS.[5] Borowski concedes that he did not review the statements and checks within fourteen days. According to Borowski's affidavit submitted to the trial court in opposition to Firstar Bank's motion for summary judgment, Kaczmarek "was intercepting all such bank statements and then lying to [Borowski] as to why the statements were not received." Interception of bank statements by a third person, however, at least under the circumstances presented here, does not relieve the customer of his or her responsibilities to either examine those statements or find out why they are not coming. *See Stowell v. Cloquet Co-op Credit Union*, 557 N.W.2d 567, 571–572 (Minn. 1997) ("The modern UCC case law of other jurisdictions is virtually unanimous

---

[5] RULE 904.06, STATS., provides:

**Habit; routine practice. (1)** ADMISSIBILITY. Except as provided in s. 972.11 (2), evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

 **(2)** METHOD OF PROOF. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

in holding that, once account statements are mailed to the account holder's proper address, the risk of nonreceipt falls on the account holder and interception of the statements by a wrongdoer does not relieve the account holder of the duty to examine the statements and report unauthorized items to the bank.") (collecting cases).[6]

Although expressed in a series of scatter-shot arguments, the essence of Borowski's claim of trial-court error is that there were issues of fact as to whether Firstar Bank was negligent in handling the two accounts, and, therefore, that summary judgment was not appropriate.[7] We disagree. Section 404.406(4), STATS., 1991–92, precluded a customer "from asserting against the bank" any "unauthorized signature or . . . alteration" unless the customer timely notifies the bank of the unauthorized signature or alteration. This preclusion applies "[w]ithout regard to care or lack of care of either the customer or the bank." *Ibid.* Stated

---

[6] We do not analyze situations where a customer does not review bank statements because of other circumstances, not present here.

[7] Insofar as Borowski's arguments stray beyond this core contention, they are undeveloped and amorphous. Accordingly, we do not address each one individually. *See Libertarian Party of Wisconsin v. State*, 199 Wis. 2d 790, 801, 546 N.W.2d 424, 430 (1996) (appellate court need not discuss arguments unless they have "sufficient merit to warrant individual attention"); *State v. Waste Management, Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151 (1978) (scatter-shot arguments should be addressed on appeal by reference to category into which they fit—"An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."); *Barakat*, 191 Wis. 2d at 786, 530 N.W.2d at 398 (appellate courts do not address undeveloped and amorphous arguments).

another way, under § 404.406(4) a bank is not liable for its own negligence with respect to payments made from a customer's account as the result of an unauthorized signature or alteration unless the bank receives timely notification from the customer of the unauthorized signature or alteration. Thus, whether a bank is at fault is not material if the customer does not give the bank timely notice under § 404.406(4) that something is amiss.

As noted, although § 404.406(4), STATS., 1991–92, provided that the notice must be made "within one year from the time the statement and items are made available to the customer," Firstar Bank contends that this one-year period was lawfully reduced to fourteen days by the clauses quoted above from Borowski's agreements with Firstar Bank in connection with the two accounts. Borowski does not argue that the two clauses did not attempt to modify the one-year period in § 404.406(4).[8] Rather, he asserts that the attempted modification was ineffective because § 404.103(1), STATS., 1991–92, prevents any agreement between a bank and its customer from "disclaim[ing] a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or . . . limit[ing] the measure of damages for such lack or failure." We disagree—it is not the *agreement* between Borowski and Firstar Bank

---

[8] As with the question of whether the agreements were contracts of adhesion, *see* footnote 4, above, Borowski's reply brief asserts a passing and wholly undeveloped contention that the agreements did not apply to § 404.406(4), STATS., 1991–92. As we point out in footnote 4, however, we do not consider arguments that are undeveloped or that are raised for the first time in an appellant's reply brief. Accordingly, we do not discuss or decide whether the clauses in Borowski's contracts with Firstar Bank were intended to modify § 404.406(4).

that gives the bank immunity even if it is negligent, it is *§ 404.406(4)*; all the agreement does is reduce the time within which the customer must notify the bank of an unauthorized signature or an alteration from one year to fourteen days. *Cf. Keiting v. Skauge*, 198 Wis. 2d 887, 894–895, 543 N.W.2d 565, 568 (Ct. App. 1995) (contract provision reducing statute-of-limitation period not exculpatory contract because it "merely alters the limitations period which the law would otherwise impose").[9]

Borowski also contends that the fourteen-day period is unreasonably short, especially in light of § 404.406(4), STATS., 1991–92's default-provision of one year. As noted, § 404.103(1), STATS., 1991–92, permitted a bank and its customer to vary the provisions of the Uniform Commercial Code so long as "the standards" by which the bank's "responsibility is to be measured . . . are not manifestly unreasonable." We apply the "manifestly unreasonable" test to the agreement between Firstar Bank and Borowski to reduce the one-year period to fourteen days. *See Stowell*, 557 N.W.2d at 574. This presents a question of law. *See Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 233, 568 N.W.2d 31, 34 (Ct. App. 1997) (interpretation of a statute is a question of law). There is a paucity of authority addressing whether a depositor's action against a bank is barred by UCC 4—406(4) when the one-year period is reduced to the extent it is here. The weight of that limited authority, however, supports Firstar Bank.

---

[9] Thus, Borowski's extended discussion of exculpatory agreements is not apposite. Again, it is not the agreement that relieves Firstar Bank from the consequences of its own negligence, if any, but, rather, § 404.406(4), STATS., 1991–92.

First, Uniform Commercial Code provisions regulating banks' relationships with their customers require persons to be vigilant in the conduct and safeguarding of their own affairs. *See* UNIFORM COMMERCIAL CODE § 4—406, 2B U.L.A. 86, official cmt. 7 (West. Supp. 1997) ("The forty existing [that is, pre-Code] statutes on the subject as well as Section 4—406 evidence a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items.").

Second, § 404.103(1), STATS., 1991–92, specifically permitted the bank and Borowski to modify the one-year period as long as the modification was not "manifestly unreasonable"; the reasonableness of the resulting fourteen-day period may be gauged by how other states have modified the default one-year period in their enactment of UCC 4—406(4), *see* WILLIAM D. HAWKLAND, J. FAIRFAX LEARY, JR., AND RICHARD M. ALDERMAN, UNIFORM COMMERCIAL CODE SERIES § 4–103:02, at 158 (1984) ("Also, the action of some legislatures in shortening the terms of the various time limits fixed by section 4—406 can be adduced to support the reasonableness of agreed periods [between customer and bank] in other states shortening their longer periods."). Alabama and Oregon have reduced the period to "180 days." *See* ALA. CODE § 7–4–406(f); OR. REV. STAT. § 74.4060(6). Georgia has reduced the period to "60 days," *see* GA. CODE ANN. § 11–4–406(f), and Washington has reduced the period to "sixty days" for any customer other than "a natural person whose account is primarily for personal, family, or household purposes." WASH. REV. CODE § 62A.4–406(f). These are all,

to one degree or another, substantial reductions, albeit none is as drastic as the reduction imposed by Firstar Bank's account rules.

Third, an underlying purpose of Wisconsin's Uniform Commercial Code is "[t]o make uniform the law among the various jurisdictions." Section 401.102(2)(c), STATS., 1991–92. We therefore give substantial weight to cases from other jurisdictions that address the validity of reduced time limits for notice under statutes analogous to § 404.103(1), STATS., 1991–92, and § 404.406(4), STATS., 1991–92. The only reported case that we were able to find that addresses the precise question at issue here, *Parent Teacher Ass'n v. Manufacturers Hanover Trust Co.*, 524 N.Y.S.2d 336, 341–342 (N.Y. Civ. Ct. 1988), approved a reduction from one year to fourteen days without regard to whether or not the bank was negligent. *See also Basse Truck Line, Inc. v. First State Bank*, 949 S.W.2d 17, 21–22 (Tx. Ct. App.) (applying *Parent Teacher Ass'n*'s rationale), *writ denied* (1997); BARKLEY CLARK & BARBARA CLARK, THE LAW OF BANK DEPOSITS, COLLECTIONS AND CREDIT CARDS ¶ 3.01[3][c] at 3–28 (rev. ed. 1995) ("The reduction in notice from one year to 14 days does not seem out of line, although a bank would be pushing it by attempting to reduce the period further.") (commenting on *Parent Teacher Ass'n*); *but see Stowell*, 557 N.W.2d at 574 (in *dictum*, opining that a reduction from one year to twenty days would be "manifestly unreasonable" if limitation prevented action against bank for its own negligence but also rejecting argument that "in this modern age of extended travel, twenty days is simply an unreasonably short period to which to limit an account holder's opportunity to discover and report unauthorized items in the account statement") (not deciding effect of Minnesota's version of

577

§ 404.406(4), STATS., 1991–92). In upholding the four-teen-day period, the court in *Parent Teacher Ass'n* stated:

> Conditions precedent and shortened periods of limitation similar to those at issue here have been routinely accepted in the banking relationship . . . . Such provisions are not only compatible with statute and case law; they are in accord with public policy by limiting disputes in a society where millions of bank transactions occur every day.

524 N.Y.S.2d at 340 (citations omitted).

█

Based on the foregoing, we conclude that the four-teen-day period is not "manifestly unreasonable" as that term is used in § 404.103(1), STATS., 1991–92, and that Borowski's action against Firstar Bank is, subject to the bank's liability for honoring Kaczmarek's hand-written notes requesting cashier's checks drawn on the estate's account (as explained below), barred.

2. Borowski argues that the handwritten notes were never provided to him and, therefore, the notification time-limit found in § 404.406(4), STATS., 1991–92, even if reduced to fourteen days by Firstar Bank's account rules, does not preclude him from seeking recovery for Firstar Bank's alleged negligence in honoring those notes. Firstar Bank admits that it never sent to Borowski Kaczmarek's handwritten notes asking for the cashier's checks. Copies of at least some of these notes are in the appellate record, attached to Borowski's affidavit submitted to the trial court. All in all they sought $20,000 in cashier's checks from the estate's account.[10]

---

[10] Borowski alleges that additional notes were involved. He has not identified them, however, and we cannot, therefore,

As we have seen, the contract clause relating to the estate's account required notification to Firstar Bank "of an unauthorized signature or alteration on an item within 14 days after we send or make available to you your statement and items or copies of the items." The term "item" was defined by statute in effect at the time relevant to this appeal as "any instrument for the payment of money even though it is not negotiable but does not include money." Section 404.104(1)(g), STATS., 1991–92. The notes were thus "items" within the meaning of § 404.406(4) and the agreement between Borowski and Firstar Bank relating to the estate's account.[11] Borowski is thus entitled to seek recovery from Firstar Bank in connection with the money drawn on the estate's account as a result of the bank's honoring the handwritten notes, because those notes were neither sent nor made available to him as required by

address any issue relating to them. He also has not discussed on this appeal the "telephone transfers" mentioned in his affidavit submitted to the trial court in opposition to Firstar Bank's motion for summary judgment. We consider this point to be abandoned. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (issue raised but not briefed is deemed abandoned).

[11] Firstar Bank's brief asserts without any argument or analysis that the handwritten notes were not "items." The notes, however, were, on their face "instrument[s] for the payment of money," § 404.104(1)(g), STATS., 1991–92 (" 'Item' means any instrument for the payment of money even though it is not negotiable but does not include money."), and Firstar Bank has not presented us with any reason why we should conclude to the contrary. *See Barakat*, 191 Wis. 2d at 786, 530 N.W.2d at 398 (appellate court need not consider "amorphous and insufficiently developed" arguments).

both § 404.406(4), STATS., 1991–92, and his contract with Firstar Bank.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

SCHUDSON, J. *(concurring in part; dissenting in part)*. Although I agree with the disposition of this appeal and most of the majority's analysis, I disagree with the conclusion "that the fourteen-day period is not 'manifestly unreasonable.' " Majority op. at 578.

Inexplicably, the majority asserts that "[t]he weight of [the] limited authority [on the issue of whether a fourteen-day period is unreasonably short] . . . supports Firstar Bank." *Id.* at 575. Indeed, the very authorities the majority cites suggest otherwise.

According to those authorities, when legislators evaluated what reasonable time limits would be, those in Alabama and Oregon chose 180 days; those in Georgia and Washington chose 60 days. *See id.* at 576. When one appellate court considered the question, it concluded that twenty days would be "manifestly unreasonable" under some circumstances. *See id.* at 575 (citing *Stowell*, 557 N.W.2d at 574). Another authority, while accepting a fourteen-day limit, declared that "a bank would be pushing it by attempting to reduce the period further." *See id.* at 577 (quoting BARKLEY CLARK & BARBARA CLARK, THE LAW OF BANK DEPOSITS, COLLECTIONS AND CREDIT CARDS ¶ 3.01[3][c] at 3–28 (rev. ed. 1995)). Thus, the authorities certainly do not establish or even support the notion that a fourteen-day limit is reasonable.

The unreasonableness of the fourteen-day limit becomes apparent when considering one of countless potential problems for most people—everyday people,

from all walks of life, who would be unaware of and surprised by such a fourteen-day provision in their checking account agreements. Most people, taking a week or two of vacation, facing the frantic few days that typically precede and follow their time away from home and work, would not promptly review a monthly bank statement arriving during that period.

The fourteen-day limit simply does not comport with the reasonable expectations or reasonable conduct of most people. Thus, I would conclude that a fourteen-day limit is "manifestly unreasonable," *see* § 404.103(1), STATS., based not only on the limited authorities, but on unlimited common sense as well.