Present: All the Justices

NATIONAL TITLE INSURANCE
CORPORATION AGENCY

v.  Record No. 010346  OPINION BY JUSTICE CYNTHIA D. KINSER
                                      March 1, 2002
FIRST UNION NATIONAL BANK

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Henry E. Hudson, Judge

Pursuant to the provisions of Code § 8.4-406(f), a bank's customer is precluded from asserting against the bank an unauthorized signature or alteration on an item if the customer fails to report such fact to the bank within one year after a statement of account showing payment of the item is made available to the customer.  The dispositive issue in this appeal is whether a bank and its customer may, by contractual agreement, shorten the one-year period provided in Code § 8.4-406(f).  Because we conclude that Code § 8.4-103(a) permits the parties to vary that time period, we will affirm the judgment of the circuit court holding that an agreement reducing the period to 60 days is binding on the parties.

FACTS AND MATERIAL PROCEEDINGS

National Title Insurance Corporation Agency (National Title) opened an escrow checking account with First Union National Bank (First Union) in April 1996.  At that time, the parties entered into a "DEPOSIT AGREEMENT AND

DISCLOSURES For Non-Personal Accounts" (Deposit Agreement)

that defined and governed the relationship between them.

The provisions of Paragraph 12 of that Deposit Agreement,

which are at issue in this appeal, absolve First Union of

any liability for paying an item containing an unauthorized

signature, an unauthorized indorsement, or a material

alteration if National Title does not report such fact to

First Union within 60 days of the mailing of the account

statement describing the questioned item.  In pertinent

part, Paragraph 12 states:

> You should carefully examine the statement and
> canceled checks when you receive them.  If you
> feel there is an error on the statement, or that
> some unauthorized person has withdrawn funds from
> the account, notify us immediately.  The
> statement is considered correct unless you notify
> us promptly after any error is discovered.
> Moreover, because you are in the best position to
> discover an unauthorized signature, an
> unauthorized [i]ndorsement or a material
> alteration, you agree that we will not be liable
> for paying such items if . . . (b) you have not
> reported an unauthorized signature, an
> unauthorized [i]ndorsement or material
> alterations to us within 60 days of the mailing
> date of the earliest statement describing these
> items . . . .

Subsequently, First Union paid two checks

ostensibly drawn on National Title's account, both of

which were counterfeit checks and were not executed by

an authorized signatory to the account.  The first

check, paid in November 1998, was described in an

2

account statement mailed on December 5, 1998, and the second check, paid in December 1998, was described in National Title's account statement mailed on January 5, 1999. National Title did not report either of the unauthorized signatures to First Union within 60 days of the mailing of the respective account statements describing the two checks.

After First Union refused to credit National Title's account in the amounts paid on the two checks bearing unauthorized signatures, National Title filed a motion for judgment seeking to recover its losses from First Union. In its answer, First Union asserted, among other things, that National Title was precluded from making this claim because it had failed to report the unauthorized signatures within the 60-day time period specified in Paragraph 12 of the Deposit Agreement between the parties.

Ruling on the parties' cross-motions for summary judgment, the trial court concluded that First Union and National Title could contractually reduce the one-year period for reporting unauthorized signatures set forth in Code § 8.4-406(f) and that the 60-day period agreed upon by the parties in this case is not "manifestly unreasonable" under the provisions of Code § 8.4-103. The court therefore denied National Title's motion for summary

3

judgment and granted First Union's motion, entering judgment in favor of First Union. National Title now appeals from that final judgment.

ANALYSIS

Title 8.4 of Virginia's Uniform Commercial Code (UCC) establishes the rights and duties between banks and their customers with regard to deposits and collections. A bank may charge against the account of its customer only those items that are properly payable from that account.[1] See Code § 8.4-401(a). Items bearing unauthorized signatures, such as the checks in this case, are not properly payable. Id.

However, a customer has certain duties with regard to discovering and reporting an unauthorized signature or alteration on an item. If a bank sends or makes available to its customer a statement of account showing payment of items for the account, "the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported

---

[1] The term " '[i]tem' means an instrument or a promise or order to pay money handled by a bank for collection or payment." Code § 8.4-104(9). The term " '[c]ustomer' means a person having an account with a bank or for whom a bank has agreed to collect items . . . ." Code § 8.4-104(5).

signature by or on behalf of the customer was not authorized." Code § 8.4-406(c). A customer must promptly report to the bank any unauthorized payment that the customer "should reasonably have discovered" based on the statement or items provided. Id.

If a customer fails to comply with these duties, the customer is precluded from asserting against the bank the unauthorized signature or alteration on the item. Code § 8.4-406(d)(1). However, if a customer establishes that the bank "failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent" that the failure of each party contributed to the loss. Code § 8.4-406(e).[2] Finally, if a customer does not discover and report an unauthorized signature or alteration on an item within one year after the statement or items are made available to the customer, the customer is thereafter precluded from asserting against the bank the unauthorized signature or alteration. Code § 8.4-406(f). This preclusion applies irrespective of whether the bank paid

---

[2] If a bank does not pay an item in good faith, the preclusion under Code § 8.4-406(d) as to the customer does not apply. Code § 4.6-406(e).

5

the item containing the unauthorized signature or alteration in good faith. Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 101, 546 S.E.2d 696, 703 (2001).

On appeal, National Title first argues that Code § 8.4-406(f) is a statute of repose, i.e., a rule of substantive law, and that the one-year period set forth in that section is, therefore, not subject to contractual modification by the parties. Next, National Title posits that Paragraph 12 of the Deposit Agreement imports the time bar established in Code § 8.4-406(f) into subsection (c), thereby rendering the preclusion in subsection (f) meaningless. National Title further asserts that Paragraph 12 impermissibly changes the comparative negligence provisions established in Code § 8.4-406(e) and reinstates the concept of contributory negligence into Code § 8.4-406(c). Finally, National Title contends that the 60-day time limit for reporting an unauthorized signature or alteration on an item is "manifestly unreasonable," but that, if Paragraph 12 is enforceable, the 60-day limit should be construed as the parties' definition of "reasonable promptness" in determining comparative negligence, rather than as an absolute bar to National

6

Title's claim against First Union.[3]  We do not agree with National Title.

The issue in this appeal is whether a bank may, through a contractual agreement with its customer, shorten the one-year period provided in Code § 8.4-406(f) to a period of 60 days.  In Halifax Corp., 262 Va. at 101, 546 S.E.2d at 703, we characterized that one-year period as a statutorily prescribed notice that operates as "a condition precedent to the customer's right to file an action against the bank to recover losses caused by the unauthorized signature or alteration."  Accord Euro Motors, Inc. v. Southwest Fin. Bank & Trust Co., 696 N.E.2d 711, 716 (Ill. App. 1998); First Place Computers, Inc. v. Security Nat'l Bank of Omaha, 558 N.W.2d 57, 59 (Neb. 1997); Brighton, Inc. v. Colonial First Nat'l Bank, 422 A.2d 433, 437 (N.J. Super. Ct. App. Div. 1980), aff'd, 430 A.2d 902 (N.J. 1981); Weiner v. Sprint Mortgage Bankers Corp., 235 A.D.2d 472, 474 (N.Y. App. Div. 1997); American Airlines Employees Fed. Credit Union v. Martin, 29 S.W.3d 86, 95 (Tex. 2000). This condition precedent does not limit a customer's claim

_____

[3] In making its arguments, National Title asserts that cases decided prior to the revisions that were effective January 1, 1993, to Article 4 of Virginia's UCC are inapplicable.  We do not agree because the relevant provisions in former Code § 8.4-406(4) were virtually

7

against a bank but requires that the customer first perform the duty to discover and report any unauthorized signature or alteration on an item before bringing suit against the bank.  However, that characterization of subsection (f) as a condition precedent is not, as National Title suggests, determinative of the question whether a customer and a bank can, by agreement, shorten the one-year period.  The provisions of Code § 8.4-103(a) provide the analytical framework for resolving that question.

Code § 8.4-103(a) states that

[t]he effect of the provisions of this title may be varied by agreement but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure.  However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

According to Official Comment 2 regarding § 4-103 of the UCC, "[s]ubsection (a) confers blanket power to vary all provisions of the Article by agreements of the ordinary kind."  Thus, this statute allows a bank and its customer to vary by agreement the effect of the provisions of Title 8.4 as long as the agreement does not: (1) "disclaim a bank's responsibility for

---

unchanged by the revisions and now appear in Code § 8.4-406(f).

its lack of good faith," (2) "[disclaim a bank's responsibility for its] failure to exercise ordinary care," or (3) "limit the measure of damages for the lack or failure."  Code § 8.4-103(a).

The clause in Paragraph 12 of the Deposit Agreement reducing the one-year period in Code § 8.4-406(f) to a period of 60 days does not run afoul of these limitations on the authority to vary the effect of the provisions of Title 8.4.  The Deposit Agreement does not absolve First Union of its duty to exercise ordinary care or good faith, nor does it limit the measure of damages.  Instead, Paragraph 12 merely varies the effect of Code § 8.4-406(f) in that the period of time in which National Title must report an unauthorized signature or alteration on an item, without having its claim for losses precluded by the bar in subsection (f), is shortened from one year to 60 days.  Cf. Borowski v. Firstar Bank Milwaukee, 579 N.W.2d 247, 251 (Wis. Ct. App. 1998).  This reduction in the length of the statutory notice period is consistent with the concept embodied in Code § 8.4-406(f) that a bank can be held potentially liable for paying an item containing an unauthorized signature or alteration only for a limited period of time.  Thus,

9

we conclude that a bank and its customer may contractually shorten the one-year period contained in Code § 8.4-406(f) and that First Union and National Title did so in Paragraph 12 of the Deposit Agreement.

Notwithstanding this reduced time period, if National Title complies with its duty to exercise reasonable promptness in examining its account statement and reporting any unauthorized signature or altered item, First Union remains liable for paying an item bearing an unauthorized signature or alteration.  Likewise, the comparative negligence provisions contained in Code § 8.4-406(e) remain in effect during the 60-day period after First Union makes available to National Title a statement showing payment of items from National Title's account.  Thus, the provisions of Paragraph 12 at issue do not alter the scheme of liability between banks and their customers as set forth in Code § 8.4-406.

Contrary to National Title's argument, our decision in Becker v. National Bank & Trust Co., 222 Va. 716, 284 S.E.2d 793 (1981), is distinguishable. There, we held that a provision in a note allowing a mere assignee to negotiate the note was an attempt to "equate a 'holder' with a mere possessor and to make 'due negotiation' synonymous with delivery accompanied

only by assignment[,]" thereby altering the "meaning of the inviolable terms 'due negotiation' and 'holder in due course.' " Id. at 721, 284 S.E.2d at 795-96. In reaching this conclusion, we noted that the Official Comment to the relevant provision of the UCC stated that private parties cannot change the meaning of such terms as "holder in due course" or "due negotiation." Id. at 719, 284 S.E.2d at 794-95. In contrast, Paragraph 12 merely reduced the effective period of time during which First Union is potentially liable for paying an item containing an unauthorized signature or alteration. It did not alter the meaning of terms inviolable to the UCC.

Finally, National Title contends that the 60-day period for reporting unauthorized signatures or alterations is "manifestly unreasonable" under Code § 8.4-103(a). As used in subsection (a), this term is the test for determining the validity of an agreement that sets the standards by which a bank's responsibility for its lack of good faith or failure to exercise ordinary care is to be measured. While it is not necessary for us to decide in this case whether the test of manifest unreasonableness also applies to a determination regarding the validity of a reduction

11

in the time period contained in Code § 8.4-406(f), we will utilize that standard in this appeal since it is the one advanced by National Title.  In doing so, we conclude that the 60-day time limitation set forth in Paragraph 12 of the Deposit Agreement is not "manifestly unreasonable."  Other jurisdictions have likewise upheld the validity of reductions in the one-year period provided in Code § 8.4-406(f) to periods similar to or shorter than 60 days.[4]  See, e.g., Parent Teacher Ass'n v. Manufacturers Hanover Trust Co., 524 N.Y.S.2d 336, 340 (N.Y. Civ. Ct. 1988); American Airlines, 29 S.W.3d at 96-97; Borowski, 579 N.W.2d at 252-53.

A condition precedent such as the one set forth in Code § 8.4-406(f) recognizes that a customer is in a better position than a bank to know whether a signature is authorized or an item has been altered. See American Airlines, 29 S.W.3d at 92.  A reduction in the one-year period allowed in subsection (f) to a period of 60 days encourages diligence by a customer and is "'in accord with public policy by limiting disputes in a society where millions of bank

_____

[4] We do not decide today whether a period shorter than 60 days would be "manifestly unreasonable."

12

transactions occur every day.' " Basse Truck Line,
Inc. v. First State Bank, 949 S.W.2d 17, 22 (Tex. App.
1997) (quoting Parent Teacher Ass'n, 524 N.Y.S.2d at
340).

CONCLUSION

For these reasons, we will affirm the judgment of
the circuit court.[5]

Affirmed.

---

[5] National Title also claims that the circuit court engaged in "blue penciling" because Paragraph 12 of the Deposit Agreement pertains not only to unauthorized signatures and alterations, but also to unauthorized indorsements. According to National Title, the inclusion of unauthorized indorsements renders Paragraph 12 "illegal" because the reference to unauthorized indorsements in former Section 4-406(4) of the UCC was deleted and the current provisions of Section 4-406 impose no duty on a drawer to discover unauthorized indorsements. See Official Comment 5. Since this case does not involve any unauthorized indorsements, we reject National Title's argument. The circuit court merely considered the provisions of Paragraph 12 at issue and did not address the validity of other provisions. Thus, the circuit court did not attempt to modify the Deposit Agreement or otherwise engage in "blue penciling."

Similarly, we find no merit to National Title's argument that the 60-day limit should be construed as the parties' definition of "reasonable promptness."

Finally, we note that the circuit court's final order incorporates by reference its letter opinion. We do not agree with all the rulings contained in that letter opinion, some of which are the subject of assignments of error. Since those particular rulings are not germane to the Court's opinion, we do not reach those assignments of error.

13