LEE, C.J., for the Court:
¶ 1. This appeal arises from Century Construction Company LLC’s claim against BancorpSouth Bank for negligence, breach of warranty, and wrongful conversion as a result of almost $500,000 in checks having been forged by Century’s bookkeeper from its corporate checking account with BancorpSouth. Bancorp-South moved for summary judgment, arguing that the deposit agreement signed when Century opened the checking account contained a sixty-day notice provi *347 sion for fraudulent activity rather than the statutory one-year notice. The trial court agreed that as a matter of law the notice provision could be contractually shortened, and granted BancorpSouth’s motion for summary judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. On August 15,1997, Century opened a corporate checking account with Ban-corpSouth. The authorized signors on the account were Clarence Chapman Jr. and Jo Lynn Chapman.
¶ 3. In late October 2004, Century’s newly hired bookkeeper, Vicki Smith, began forging checks drawn on Century’s corporate account with BancorpSouth. The checks were made payable to vendors with whom Century did business; however, the spellings of the vendors’ names were altered. Additionally, Smith, who was not authorized to sign checks, forged the authorized signors’ names.
¶ 4. According to Century, Bancorp-South contacted Clarence Chapman in August 2005, regarding a requested payment made on the account by phone. Chapman then called the Richland, Mississippi branch of BancorpSouth and instructed the bank to disallow the requested payment and to pay items only upon the authorized signature on the account. Ban-corpSouth asserts that it has no record of either telephone conversation.
¶ 5. On September 20, 2005, after thirty-two checks totaling $450,002.55 to three separate payees had been payed, the forgeries ended. Century requested Ban-corpSouth provide the bank statements for the past year, because Smith had destroyed all of the bank statements to conceal the fraud. On September 29, 2005, Century received the statements and conducted an audit of the account.
¶ 6. According to Century, it contacted the Richland branch of BancorpSouth and reported that there had been several forgeries on the account, instructed the branch manager to notify BancorpSouth’s fraud department, and instructed that only checks signed by authorized signors should be paid. Again, BancorpSouth asserts that it has no record of this telephone conversation.
¶ 7. On October 12, 2005, Century faxed a letter to the branch manager of the Richland branch of BancorpSouth. This letter stated that “unauthorized parties” had been signing checks that were in turn paid by the bank. Century requested that BancorpSouth “only pay checks signed by authorized signors.” Century also informed BancorpSouth that it was currently auditing the activities of the account and “[would] let [BancorpSouth] know immediately of any miss appropriated [sic] funds.” And on August 30, 2006, Century, through its counsel, sent a letter to BancorpSouth regarding its claim against BancorpSouth for breach of warranty.
¶ 8. On April 23, 2008, Century filed suit against BancorpSouth for negligence, breach of warranty, and wrongful conversion. BancorpSouth moved for summary judgment, which the trial court granted. This appeal followed.
STANDARD OF REVIEW
¶ 9. Mississippi Rule of Civil Procedure 56(c) governs motions for summary judgment. “When reviewing a trial court’s grant of summary judgment, our standard of review is de novo.” Webb v. Braswell, 930 So.2d 387, 395 (¶ 12) (Miss.2006). For its review, this Court “must examine all the evidentiary matters ... including ... admissions in pleadings, answers to interrogatories, depositions^] and affidavits.” Id. The Court views the evidence in the light most favorable to the nonmoving par *348 ty. McCullough v. Cook, 679 So.2d 627, 630 (Miss.1996). To succeed on a motion for summary judgment, the moving party must prove that no genuine issue of material fact exists. Id.
DISCUSSION
I. SIXTY-DAY NOTICE PROVISION
¶ 10. When Century opened its corporate checking account with Bancorp-South, it signed a deposit agreement, stating in relevant part:
Statements — You must examine your statement of account with “reasonable promptness.” If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify [BancorpSouth] of the relevant facts.
You further agree that if you fail to report any unauthorized signatures, alterations, forgeries, or any other errors in your account within sixty (60) days when [BancorpSouth] make[s] the statement available, you cannot assert a claim against [BancorpSouth] on any items in that statement, and the loss will be entirely yours.
¶ 11. Century contends that the one-year notice statute of repose under Mississippi Code Annotated section 75-4-406(f) (Rev.2002) cannot be contractually reduced. Section 75-4-406(f) states:
Without regard to care or lack of care of either the customer or the bank, a customer who does not within one (1) year after the statement or items are made available to the customer (subsection (a)) discover and report the customer’s unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.
This section clearly limits the liability of the bank to one year after the statement was made available to the customer. However, this section must be read in conjunction with Mississippi Code Annotated section 75-4-103(a) (Rev.2002), which provides, “The effect of the provisions of this chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank’s responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure.” From a plain reading of the statute, the one-year notice provision established by section 75-4-406(f) “may be varied” by the deposit agreement.
¶ 12. Although this is an issue of first impression in Mississippi, the Wisconsin Court of Appeals addressed this very issue in Borowski v. Firstar Bank Milwaukee, N.A., 217 Wis.2d 565, 579 N.W.2d 247 (Wisc.Ct.App.1998). In Borowski, the deposit agreement shortened the one-year notice provision to fourteen days. Borow-ski asserted that the reduction in time was ineffective because section 404.103(1) of the Wisconsin Statutes, the comparable statute to Mississippi Code Annotated section 75-4-103(a), “prevent[ed] any agreement between a bank and its customer from ‘disclaiming a bank’s responsibility for its own lack of good faith or failure to exercise ordinary care or limiting the measure of damages for such lack or failure.’ ” Borowski, 579 N.W.2d at 251. The Wisconsin Court of Appeals disagreed with this contention, stating:
[I]t is not the agreement between Bo-rowski and Firstar Bank that gives the bank immunity even if it is negligent[;] it is [section] 404.406(4) [ (the comparable statute to Mississippi Code Annotated section 75^4 — 406(f)) ]; all the agreement does is reduce the time within which the customer must notify the bank of an *349 unauthorized signature or an alteration from one year to fourteen days.
Borowski, 579 N.W.2d at 251.
¶ 13. The Borowski court looked to Parent Teacher Association v. Manufacturers Hanover Trust Company, 188 Misc.2d 289, 524 N.Y.S.2d 336 (N.Y.Civ.Ct.1998), which also approved the reduction of the notice provision from one year to fourteen days without regard to the bank’s negligence or lack thereof. The court noted:
In upholding the fourteen-day period, the court in Parent Teacher [Association ] stated:
Conditions precedent and shortened periods of limitation similar to those at issue here have been routinely accepted in the banking relationship. Such provisions are not only compatible with statute and case law; they are in accord with public policy by limiting disputes in a society where millions of bank transactions occur every day.
Borowski, 579 N.W.2d at 252 (citing Parent Teacher Ass’n, 524 N.Y.S.2d at 340).
¶ 14. Numerous jurisdictions have also upheld the contractual shortening of the notice provision. See Graves v. Wachovia Bank, Nat’l Ass’n, 607 F.Supp.2d 1277, 1281 (M.D.Ala.2009) (approving the limiting of the notice provision to forty days); Am. Airlines Emp. Fed. Credit Union v. Martin, 29 S.W.3d 86, 98 (Tex.2000) (upholding the shorting of the notice provision to sixty days); Freese v. Regions Bank, N.A., 284 Ga.App. 717, 644 S.E.2d 549, 552 (2007) (finding a thirty-day notice provision not manifestly unreasonable); Napleton v. Great Lakes Bank, N.A., 408 Ill.App.3d 448, 348 Ill.Dec. 804, 945 N.E.2d 111, 119 (2010) (approving the limiting of the notice provision to thirty days); Nat’l Title Ins. Corp. v. First Union Nat’l Bank, 263 Va. 355, 559 S.E.2d 668, 672 (2002) (upholding a sixty-day notice provision); Peters v. Riggs Nat’l Bank, N.A., 942 A.2d 1163, 1168 (D.C.2008) (approving the shorting of the notice provision to sixty days); Stowell v. Cloquet Co-op Credit Union, 557 N.W.2d 567, 574 (Minn.1997) (approving a twenty-day notice provision). Century fails to cite one jurisdiction that has addressed this issue and found the contractual shortening of the notice provision to be improper. Therefore, we find that section 75-4-406(f) “may be varied” by the deposit agreement.
II. NOTICE REQUIREMENTS
¶ 15. Section 75-4-406(f) places the burden on the customer to “discover and report the customer’s unauthorized signature on or any alteration on the item....” An item is defined as “an instrument or a promise or order to pay money handled by a bank for collection or payment.” Miss.Code Ann. § 75-4-104(a)(9) (Supp.2012). Century asserts that section 75-4-406(f) does not require specific notice of each check but that constructive notice is sufficient. Century claims it gave Ban-corpSouth constructive notice on three different occasions: (1) by a telephone call to the Richland branch in August 2005; (2) by another telephone call to the Richland branch in September 2005; and (3) by a letter faxed to the Richland branch on October 12, 2005. Century gave specific notice in a letter sent to BancorpSouth’s registered agent in Tupelo, Mississippi, on August 30, 2006.
¶ 16. When interpreting a statute, the Court does “not ... decide what a statute should provide, but ... determine^] what it does provide.” Lawson v. Honeywell Int’l, Inc., 75 So.3d 1024, 1027 (¶ 7) (Miss.2011) (citations omitted). We must do so without broadening or restricting the statute. Id. “If the words of a *350 statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction.” Id. Here, section 75-4-406(f) plainly states the customer has a duty to “discover and report the customer’s unauthorized signature on or any alteration on the item ....” (Emphasis added). Under the unambiguous language of the statute, the customer must report the item; therefore, the statute requires specific notice.
¶ 17. Although the Mississippi Supreme Court has not interpreted if section 75-4-406 requires specific notice, the court stated in Union Planters Bank, National Association. v. Rogers, 912 So.2d 116, 121 (¶ 13) (Miss.2005):
Because the customer is more familiar with his own signature, and should know whether or not he authorized a particular withdrawal or cheek, he can prevent further unauthorized activity better than a financial institution which may process thousands of transactions in a single day. Section 4-406 acknowledges that the customer is best situated to detect unauthorized transactions on his own account by placing the burden on the customer to exercise reasonable care to discover and report such transactions.
(Emphasis added).
¶ 18. Although the statute is silent as to the specifics of these items or transactions that must be reported, the Illinois Court of Appeals has stated that “common sense indicates that the report should be sufficient to at least identify the quantity of checks involved, their amounts, the dates and check numbers, the names of the payees, or any other specific information upon which the bank could have acted.” Watseka First Nat’l Bank v. Horney, 292 Ill.App.3d 933, 227 Ill.Dec. 19, 686 N.E.2d 1175, 1179 (1997) (addressing Knight Commc’ns, Inc. v. Boatmen’s Nat’l Bank of St. Louis, 805 S.W.2d 199 (Mo.Ct.App.1991)).
¶ 19. Viewing the facts in the light most favorable to Century, the nonmoving party, we must assume that Chapman made both phone calls to the BancorpSouth branch in Richland. According to Century, during the August 2005 phone call, Chapman instructed BancorpSouth “to disallow the wire transfer and ... to only pay checks confirmed to be an authorized signature on the account.” Also according to Century, during the September 2005 phone call, Chapman notified Bancorp-South that forgeries on the account had occurred, “instructed the branch manager to notify [BancorpSouth’s] fraud department,” and again asked that “only corporate checks with authorized signatures should be paid.” During these phone calls, Century never spoke about “the item,” as required by section 75-4-104(a)(9), or “such transaction,” as required by Rogers, 912 So.2d at 121 (¶ 13). In fact, Century never stated “the quantity of checks involved, their amounts, the dates and check numbers, the names of the payees, or any other specific information upon which the bank could have acted.” Horney, 227 Ill.Dec. 19, 686 N.E.2d at 1179.
¶ 20. On October 12, 2005, Chapman faxed a letter to BancorpSouth, stating:
It has come to our attention that unauthorized parties have been signing cheek[s] on our account named above[,] and the bank has been paying those. Please make sure to only pay checks signed by authorized signors.
We are currently auditing this account and will let you know immediately of any miss appropriated [sic] funds.
Again, Century did not inform Bancorp-South of “the item” or “such transactions,” nor did it state “the quantity of checks involved, their amounts, the dates and *351 cheek numbers, the names of the payees, or any other specific information upon which the bank could have acted.” Miss. Code Ann. § 75-4-104(a)(9); Rogers, 912 So.2d at 121 (¶ 13); Horney, 227 Ill.Dec. 19, 686 N.E.2d at 1179.
¶ 21. Instead of letting BancorpSouth know immediately of any misappropriated funds, Century did not contact the bank again until August 30, 2006, when it sent a letter through its counsel to Baneorp-South’s registered agent. Century enclosed in the letter “a ledger listing the checks which were paid by BancorpSouth which were forged and contain unauthorized signatures.” This ledger informed BancorpSouth of “the item(s)” and “such transactions,” under the requirements of section 75-4-406(f). We find that Century did not give the notice required under section 75-4-406(f) until it sent the ledger to BancorpSouth on August 30, 2006.
III. TIMELINESS OF NOTICE
¶ 22. The forgeries ended on September 20, 2005. Under the deposit agreement, Century had sixty days after receiving notice to inform BancorpSouth of these forgeries. As stated above, Century did not report the specific items to Bancorp-South until August 30, 2006, almost one year after the forgeries ended.
¶ 23. Because Century failed to report the specific items to BancorpSouth within the sixty-day notice period mandated by the deposit agreement, we find that the trial court’s grant of summary judgment was proper.
¶ 24. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BARNES, ISHEE, ROBERTS AND FAIR, JJ„ CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING AND GRIFFIS, P.JJ., AND JAMES, J. MAXWELL, J., NOT PARTICIPATING.